[No. 1845, September 23, 1916.]
## STATE v. PRUETT.

### SYLLABUS BY THE COURT.

1.  A motion for a continuance is addressed to the sound discretion of the trial court which will not ordinarily be disturbed, especially in the absence of injury to the moving party.                                                    P. 225

2.  The admission of an item of evidence which is immaterial and which, technically, is inadmissible, where it in no way reflects upon the guilt or innocence of the defendant, and is consequently not prejuidicial to him, is not sufficient cause to reve_ ye a judgment.             P. 228

3.  Evidence of the communication to the deceased of a threat of the defendant against him, is relevant, where, as in this case, the evidence for the prosecution as to the actual occurrence at the time of the homicide is entirely circumstantial, and where the action of the deceased, under the circumstances, was to be determined without the aid of direct proof, except as developed by the testimony of the defendant.

P. 228

4. Any witness may express an opinion, upon a non-technical subject, based upon data which he has observed, when it is impossible by word of mouth or gesture to reproduce the data before the jury so that the jury may intelligently draw the inferences therefrom which the witness has drawn. The principle applies to opinions in regard to kneeprints of a man.                                    P. 229

5. Evidence of a meeting of witnesses for the prosecution to organize a mob to hang the defendant, if it establishes such meeting, is admissible to show bias and prejudice of such witnesses. But where such evidence fails to show such meeting, it was correct for the court to strike it out on motion of the prosecution.                        P. 232

6. Evidence that the deceased knew he would meet the defendant on the road at a certain place and that he went there armed is material and competent in a case like the present as reflecting upon the state of mind and probable conduct of the deceased when he met the defendant.
                                                        P. 233

7. The defense put upon the stand a witness, Silas Crook, who testified to the circumstances of the first difficulty between the defendant and the deceased, occurring about one week before the homicide. He was asked on cross-examination whether, on the next day, he had not told one Walter Hern that the wife of deceased would be a widow within a week. On rebuttal, the prosecution was permitted to prove by the witness Hern that the witness Crook had made such statement. The evidence is held to be inadmissible from any standpoint, and to be highly prejudicial to the defendant, requiring a reversal of the case.
                                                        P. 234

Appeal from District Court, Union County. Leib, Judge.

James C. Pruett was convicted of voluntary manslaughter, and appeals. · Reversed and remanded, with instructions to award a new trial.

. O. P. EASTERWOOD of Clayton, for appellant.

H. S. BOWMAN, Assistant Attorney General, for the State.

## OPINION OF THE COURT.

PARKER, J.—Appellant shot and killed one Cleasie Cheek on October 17, 1914. He was indicted for murder on March 5, 1915, and thereupon entered a plea of not guilty on that day. The case was set down for trial for March 12th, but the trial did not begin until March 15, 1915. Appellant was convicted of voluntary manslaughter and sentenced to the penitentiary for the term of not less than eight nor more than ten years.

[1] Upon the coming in of the indictment and the entry of the plea of not guilty, appellant filed his motion for a continuance, based on the following grounds, viz.: (1) That his principal attorney, Theodore Pruett, a brother of appellant, resided in Anadarko, Okl., and was then engaged in the trial of causes in the district courts of Oklahoma, and on that account was unable to absent himself from his business there to appear at Clayton, N. M., where this trial was to be had; that he had employed Mr. O. P. Easterwood of Clayton, N. M., to assist his principal attorney, but that he had never communicated to him in detail the facts in regard to his defense, and had no opportunity to do so for the reason that he had been and then was confined in jail; and that said Easterwood was so engaged with other business at the then pending term of court that he would not be able to prepare appellant's defense until the next term of court. (2) That defendant did not have sufficient funds with which to secure the attendance of his witnesses, and that he had not less than from 12 to 20 whom he needed in his defense. (3) That on account of the high state of excitement and prejudice in the locality of the homicide, and on account of the numerous threats by people residing in such locality, and the great danger to the life of appellant and his said brother, they had been afraid to visit the locality for the purpose of gathering the evidence nec-

essary for his defense. (4) That a large number of witnesses had appeared before the grand jury which indicted appellant, and that he could, if allowed sufficient time to visit the neighborhood of the homicide, procure evidence to impeach and discredit the testimony of a large number of such witnesses, but that at the time of making of the affidavit he had no way of knowing the names of such proposed witnesses. (5) That appellant could, if permitted time and opportunity, procure witnesses to show that the deceased was a quarrelsome and dangerous man, and that appellant was a quiet, peaceable, and law-abiding citizen; that appellant's character witnesses were mostly desidents of Oklahoma, and had signified their desire and willingness to attend the trial upon reasonable notice, but that on account of the condition of the roads in Oklahoma it was impossible to gather these witnesses and get them to Clayton for the trial. (6) Appellant was informed that the prosecuting witnesses in the cause had employed two or three firms of attorneys to assist in the prosecution of the cause, and that a great deal of money had been expended by them in securing evidence and witnesses against the defendant, and that the defendant was without funds to meet such an array of counsel and witnesses at the present term of this court, but that he could do so and could secure evidence to discredit or rebut the evidence of such witnesses at the next term of the court.

A counter affidavit was filed by two attorneys who had been employed to assist in the prosecution, in which they state that they had recently visited the scene of the homicide and had made careful inquiry as to the state of feeling in the locality against the defendant, and that, so far as they could ascertain, no feeling of hostility existed, and that no foundation for any apprehension of any violence toward the defendant or any one representing him, who might go into that locality seeking evidence, existed, and that according to their best information and belief, the defendant or any one representing him might have gone into the locality for the purpose of securing evidence without danger or molestation.

The court overruled the motion for a continuance. The principal attorney, the brother of the appellant, appeared at the trial and participated in the same. The appellant produced at the trial 21 witnesses in his behalf, thus showing that, notwithstanding his fears, he was, as a matter of fact, able to produce his witnessse and have them testify in the case. The appellant admitted the killing, claiming that it was done in self-defense. There was no eyewitness to the homicide. All of the testimony in the case was circumstantial, except that of the defendant and his declarations made to other persons. In the motion for a new trial no showing whatever is made of any prejudice to the defendant by reason of the absence of witnesses whom he might have secured had he had further time in which to do so.

In the brief of counsel for the appellant, no reliance is placed upon the fact that the Oklahoma witnesses could not be produced at the trial, and we assume that no injury is now predicated thereon.

Under such circumstances we do not understand how the appellant can complain of the action of the court in overruling the motion for a continuance. It does not appear that he suffered any injury whatever. His principal counsel from Oklahoma was present at the trial, and so far as appears all of the witnesses upon whom he relied, 21 in number, were present and testified. Even if the action of the court, at the time the motion for continuance was overruled, could have been subject to criticism, the appellant is in no position to complain of the same here, he having suffered no injury therefrom. The doctrine in this jurisdiction is firmly established that a motion for continuance is addressed to the sound discretion of the trial court, and ordinarily the court's action thereon will not be disturbed. Territory v. Padilla, 12 N. M. 1, 71 Pac. 1084; Mogollon G. & C. Co. v. Stout, 14 N. M. 245, 91 Pac. 724; Ross v. Carr, 15 N. M. 17, 103 Pac. 307; Perea v. Insurance Co., 15 N. M. 399, 110 Pac. 559; Territory v. Lobato, 17 N. M. 666, 134 Pac. 222; Territory v. Emilio, 14 N. M. 147, 89 Pac. 239.

In this case there was no abuse of discretion nor injury to the appellant, and of course he cannot complain in this court under such circumstances.

[2] It appears from the record that the difficulty between appellant and the deceased originated out of the fact that the deceased, in a violent manner and while armed with a pistol, ordered the appellant off and away from the Cross L. Ranch, where he was at the time. It appears that the deceased was one of the older hands upon the place, and that a man by the name of Trumball was foreman of the ranch. Upon leaving the ranch the foreman instructed the deceased that if the appellant came upon the ranch during his absence to order him off. The prosecution put the witness Trumball on the stand and proved by him, over the objection of appellant, that he had given such order to the deceased. The assistant district attorney, in explaining the object of the testimony, stated to the court that it was introduced in order to show motive for the crime. In this he was in error. The only facts in evidence which would tend to show motive for the homicide were the facts that the deceased ordered the appellant off the ranch and did so in an insulting and violent manner. It was perfectly immaterial why he ordered the appellant off, and the evidence admitted by the court that the foreman had instructed the deceased to order appellant off was immaterial, and should have been excluded. It is not pointed out in the brief of counsel for appellant, however, in what manner this evidence prejudiced the rights of his client. It is a fact in the case, standing alone, entirely disconnected from any theory advanced by either the prosecution or defense, and in no way reflected upon the guilt or innocence of the defendant. The admission of the testimony was technically erroneous, but under the circumstances, so long as no injury to the appellant resulted, the judgment should not be reversed.

[3] It appears from the record that the appellant, shortly after the deceased had ordered him off the ranch, asked the witness Hardesty if he knew what the trouble was about, and the witness Hardesty told him he did not.

Appellant then asked the witness Hardesty if he did not
have a gun which he could loan him, and said that if
they were looking for trouble that he would meet them
off the ranch some time. The witness Hardesty was then
asked whether he communicated this conversation to the
deceased prior to the homicide, and he answered that he
did, which testimony was objected to by counsel for ap-
pellant; the objection being that it was incompetent to
show that a threat of the appellant was communicated to
the deceased.

In regard to this testimony it is to be noticed that
the evidence for the prosecution was entirely circumstan-
tial. No one was present at the time of the homicide,
except the deceased and the appellant. Just how the de-
ceased behaved himself and what he did on that occasion
was relevant and material to the inquiry as to the guilt
or innocence of the appellant. If he was informed of a
threat by the appellant, then his actions upon encounter-
ing the appellant would be governed accordingly; at least,
probably so. The only legitimate inference to be drawn
from the testimony is that the deceased, having been
warned of the threat, at once became the aggressor upon
meeting appellant at the time of the homicide, or that
he prepared to defend himself. We do not understand
how the appellant can object to this testimony, because it
is not only not prejudicial to him, but is favorable to
him. It tends to corroborate his testimony wherein he
describes the occurrence and says that the deceased came
riding up, pulled his Winchester, and said he was going
to kill appellant, and had his gun leveled at appellant
when the fatal shot was fired.

[4] Counsel for appellant objected to the action of
the court in permitting the witnesses for the state to
testify, over the objection of the defendant, that they saw
knee-prints adjacent to a cedar bush near the scene of
the homicide. The theory of the prosecution was that
the homicide was a murder in the first degree, and was
accomplished by means of lying in wait. At least one of
the witnesses for the prosecution testified that the knee-
print which he identified was located at the natural dis-

tance from a toe-print of the left foot, and that there was an impression of the ball 'of the right foot about opposite the knee-print. Other witnesses testified with less particularity, but identified the impression on the ground as that of the impression of a knee. Counsel for the appellant does not seem to deny the proposition that a foot track might be identified as such by witnesses, but seems to argue that a knee-print is of such an indefinite character as to be incapable of identification, and argues therefrom that the testimony was a mere conclusion or opinion of the witnesses, and not the evidence of the facts. No authority is cited in support of the contention, and none can be found supporting it, we assume.

We do not deem it necessary to go into any extended discussion of the so-called "opinion rule" of exclusion of testimony.. It will be sufficient merely to state the underlying principle by which said rule is applied. That principle is that any person may express an opinion before a jury, upon a non-technical subject, based upon data which he has observed when it is impossible by word of mouth or gesture to reproduce the data before the jury, so that the jury may intelligently draw the inference therefrom which the witness has drawn. This principle is expressed by Mr. Wigmore as follows:

"There is a rule of evidence which excludes, on the ground of superfluity, testimony which speaks to the jury on matters for which all the materials for judgment are already before the jury. This testimony is excluded simply because, being useless, it involves an unnecessary consumption of time and a cumbersome addition to the mass of testimony. In the majority of instances the testimony thus excluded will consist of an 'opinion' by the witness, i. e., a judgment or inference from other facts as premises, and it will be excluded because other facts are already or may be brought sufficiently before the tribunal. If they are not or cannot be, then the witness' judgment or inference will be listened to." 1 Wig. on Evid. § 557.

Again he says:

"The second group of persons to whom the opinion rule has to be applied includes those who concededly have no greater skill than the jury in drawing inferences from the kind of data in question. Such a witness' inferences are in-

admissible when the jury can be put into a position of equal vantage for drawing them; in other words, when by the mere words and gestures of the witness the data he has observed can be so reproduced that the jurors have those data as fully and exactly as the witness had them at the time he formed his opinion." 3 Wig. on Evid. § 1924.

Various attempts have been made to classify subjects about which non-professional witnesses may, according to this principle, give opinion evidence. For example, in Hardy v. Merrill, 56 N. H. 241, 22 Am. Rep. 441, it is said:

"All concede the admissibility of the opinion of non-professional men upon a great variety of unscientific questions arising every day, and in every judicial inquiry. These are questions of identity, handwriting, quantity, value, weight, measure, time, distance, velocity, form, size, age, strength, heat, cold, sickness, and health; questions, also, concerning various mental and moral aspects of humanity such as disposition and temper, anger, fear, excitement, intoxication, veracity, general character, and particular phases of character, and other conditions and things, both moral and physical, too numerous to mention."

See, in this connection, 3 Wig. on Evid. § 1977, where many cases are collected in a note. See, also, 1 Wharton's Crim. Evid. (10th ed.) § 460.

Applying this principle to the testimony in regard to the knee tracks it is perfectly apparent that the same was competent. It was impossible for the witness to describe the knee-prints with such detail as would be required to give the jury a fair idea of the data upon which the witnesses based their opinion that it was a knee-print. A familiar example of the application of this principle is furnished by a case of identification of a person. To illustrate: A witness meets a person on the street whom he identifies as A. His identification of A. depends upon a vast number of details about his form, the color of his eyes, the sound of his voice, his walk, and many other things which it would be impossible for the witness to reproduce by word of mouth before the jury. His identification of the person whom he met as A. is a mere conclusion from many items of data which he could not describe and which he might in fact be unable to state, and

his identification would still be complete and perfect.

The only case to which we have been referred, expressly recognizing the admissibility of testimony in regard to knee-prints, is the English case of Rex v. Brindley, reported in Warwick Spring Assizes, and decided in 1816, and quoted from in the note to section 935 of 2 Wharton's Criminal Evidence (10th ed.). But there can be no doubt about the admissibility of such testimony.

[5] The defendant put a witness on the stand for the purpose of showing that a meeting of citizens had been held in what is called the Detherage schoolhouse, for the purpose of organizing a mob to hang the defendant in case he was not convicted at the trial, in which meeting several of the witnesses for the prosecution were alleged to have participated. He had previously shown by another witness that a meeting had been called for the 13th of September if the parties were at home, at Bob Detherage's house. The witness first mentioned testified that she was a school teacher at the schoolhouse near Detherage's house; that she dismissed school on March 1st, to attend the grand jury in this case, and when she left the schoolhouse that evening three or four of the girls stayed and were sweeping the room when she left. When she returned the next Friday morning the door of the schoolhouse was unlocked, the seats moved up around the stove, the wood and kindling were burned, there was mud all over the floor, and it looked as though it had been carried in on shoes, and that the persons who had been there had been chewing tobacco and spitting on the stove, around the stove, and in the ash bucket. On cross-examination the witness testified that she saw in Clayton, where the grand jury convened, all of the witnesses for the prosecution to which this testimony related, except one. At the close of this testimony the assistant district attorney moved to strike out the same as immaterial, which motion was sustained by the court and exception taken by the appellant. Appellant argues that this action of the court was erroneous, and that the testimony was admissible in order to show bias and prejudice on the part of the witnesses for the prosecution. That

the testimony, if it established the fact of a meeting of the witnesses for the prosecution and others at the school-house, was admissible as tending to show prejudice and feeling on the part of the witnesses is not to be questioned. The trouble with the testimony is that it failed to show any meeting of persons at which the witnesses for the prosecution were present. The testimony of the witness who preceded the school teacher does not show that any meeting had been arranged at the schoolhouse. On the other hand, it tends to show that a meeting had been arranged at the house of the witness for the prosecution, Detherage. There is, therefore, no error in striking out this testimony, and the cases cited by counsel for appellant in regard to the right to show bias or prejudice of witnesses have no application.

[6] On cross-examination of the witness for the defendant Silas Crook, he was asked whether he had not requested permission to go back before the grand jury and make a statement of something he had left out. He answered that he did make such request. He was then asked whether he did not make the statement, referring to the deceased, that:

"When Saturday evening came he seemed to be in a hurry. He shaved at noon so he could start home early. After 5 o'clock he came up to go home. Other times he never did leave until after dark. But we knew and he knew that Mr. Pruett (appellant) would be right on the road that he would go over."

The witness denied making such statement. The stenographer who took the testimony before the grand jury was put on the stand in rebuttal and testified that the witness did make such statement.

Counsel for appellant argues that this examination of the witness Crook was for the purpose of contradicting him upon an immaterial matter upon which the district attorney was bound by his first answer. The witness had been asked on cross-examination whether he knew at the time the deceased left the ranch that he would go right over the road that the defendant was on. He denied that

he knew where Pruett was, and asserted that he had no idea where he was. All that he knew was that appellant was going to be at a certain neighbor's house to take some cows there, but did not know where he would be on the road. It was clearly immaterial as to whether the witness knew that the deceased would meet the defendant on the road. It was not immaterial, however, whether the deceased knew that he would meet the appellant on the road. Under the facts and circumstances in this case, and in view of the defense of defendant interposed, the conduct, frame of mind, and actions of the deceased were relevant to the issues. If the witness had stated before the grand jury that the deceased knew that he would meet the appellant on the road, it was material to show the same. Just why the prosecution desired to put in this testimony or why the appellant desired to exclude it we are unable to understand. The proof of the statement of the witness before the grand jury was detrimental to the prosecution and beneficial to the appellant. It follows that there was no error in the admission of which the appellant can complain.

[7] The original difficulty between the appellant and the deceased occurred on the 11th of October, 1914, at the Cross L. ranch. On the following day this same witness, Silas Crook, is alleged to have stated to the witness Sanford Hern that Minnie Cheek, wife of the deceased, would be a widow inside of a week. The witness Crook denied making any such statement, and said that he had never thought of such a thing, and that there was no threat made by the appellant against the deceased. The witness Sanford Hern was put upon the stand in rebuttal, and was asked whether the witness Crook had made the statement mentioned above, and he answered in the affirmative, over the objection of the appellant.

Upon what theory this testimony could have been offered by the prosecution we are unable to understand. So far as we can see, it is inadmissible from any standpoint, or any rule governing the admission of evidence. It antagonizes the hearsay rule, it does not tend to contradict the witness upon a relevant or competent issue,

it does not reflect upon the bias or interest of the witness, and is wholly inadmissible for any purpose. This was evidently an attempt to show by indirection and hearsay that the witness knew from something that occurred on the occasion of the first difficulty, that the appellant intended to attack and kill the deceased, and that he thereafter asserted that Mrs. Cheek would be a widow within a week. He was not asked, however, on direct or cross-examination as to whether appellant made any threat against the deceased or said or did anything from which the inference could be drawn that he intended to attack the deceased. This was not admissible, and the testimony was highly prejudicial to the defendant. The Attorney General does not attempt to justify the introduction of this evidence, but argues that it was so immaterial as to be harmless. We do not so consider it. The testimony must have been intended to mean and did mean, before the jury, that the witness knew something from the defendant, either by way of threat or some other action, that he intended to attack the deceased. Counsel for appellant have cited and digested many cases, but we do not deem it necessary to refer to them, as this proposition seems easily to be settled upon general principles.

Much argument is made in the brief concerning alleged error growing out of the conduct of the court in conducting the trial, and in making alleged comments upon the testimony and upon the conduct of counsel for the defendant, in attempting to put in the defense of the appellant. We will not consider the same for the reason that this cause will be remanded for a new trial in any event.

Errors are assigned upon the giving of numerous instructions. The Attorney General argues that these instructions are not before the court for consideration, because they are not embodied in the bill of exceptions, and no order requiring them to be filed in the cause is found in the record. Upon the next trial of this case such defects or irregularities may be corrected in case of another conviction and appeal.

Counsel makes an elaborate analysis of the testimony to show that there is no evidence in the case sufficient to

convict the defendant. They also complain of misconduct of the jury in that the jurors were permitted to separate. None of these considerations become material in view of the disposition to be made of the case, and will therefore not be discussed.

For the reasons stated in the seventh paragraph, the judgment of the court below will be reversed, and the cause remanded, with instructions to award a new trial; and it is so ordered.

HANNA, J., concurs.

ROBERTS, C.J., being absent, did not participate in this opinion.