444 P.2d 609

STATE of New Mexico, Plaintiff-Appellee,

v.

Jose Robert GRAY, Defendant-Appellant.

No. 154.

Court of Appeals of New Mexico.

Aug. 9, 1968.

Henry G. Coors, Willard F. Kitts, Albuquerque, for appellant.

Boston E. Witt, Atty. Gen., Gary O'Dowd, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

OMAN, Judge.

Defendant, who is twenty-one years of age, was convicted of second degree murder. The victim was a two year old girl, who was the youngest of ten children of a

woman with whom the defendant had been living and cohabiting for approximately one year.

The death of the child resulted from a beating administered by defendant on April 13, 1967 by striking with clenched fists and kicking the child in the abdomen. Present in the home at the time of the beating, besides the defendant and the victim, were three other daughters of the woman, and their ages were ten, eight and four years, respectively. The victim had been ill with chicken pox for approximately ten days, and vomiting was one of the incidents of her illness. She continued to vomit frequently after the beating until her death the following day.

The sole question to be decided on this appeal is the claimed error of the trial court in admitting certain real evidence offered by the State. The claims are that the evidence was inadmissible because (1) a proper chain of custody—at least as to some of the exhibits—was not established, (2) a proper foundation was not laid, and (3) the evidence did not tend to prove any element of the crime charged, but tended only to excite the minds and emotions of the jury.

All but three of these exhibits consist of certain articles of clothing supposedly belonging to the child or to the defendant. One of the said three exhibits is a newspaper found some place in the home where the beating occurred; another consists of some paper scrapings taken from a wall in a hallway in the home; and the third is a bedspread taken from a couch on which the child lay for some time after the beating.

The clothing supposedly belonging to the child, which was received into evidence, consists of a blue dress, a pink dress, some corduroy coveralls, and some slippers. No one ever specifically identified any of these items as having been worn by the child at or near the time of the beating. The nearest thing to identifying evidence came from an officer who went to the home the day after the beating and after the child had died. He testified that he had picked up clothing "which belonged to the baby." The child's mother, a fourteen year old brother, and the ten year old sister, all of whom testified for the State, were not asked to identify any of these items. Reference is made by one witness to a blue dress having been worn by the child at the time of the beating, and that she was subsequently changed into a pink dress. But the particular blue and pink dresses in question were in no way identified, except as such may be said to be included in the reference by the officer to clothing "which belonged to the baby," and by reference to the presence thereon of blood and stomach fluids as hereinafter discussed.

One of these dresses came from the bathroom into which the child was taken either by the defendant or the victim's ten year old sister, and the other came from a closet or storeroom, which contained other articles of clothing, "quite a lot of rubbish, quite a lot of stuff," and perhaps a water heater. Just which dress came from the bathroom and which from the storeroom is unknown. Nothing in the testimony shows the child was ever in this storeroom, or that either of the dresses was placed or thrown there by anyone.

A special agent of the Federal Bureau of Investigation made tests of all the exhibits to determine the presence of blood thereon, whether or not any blood found thereon was that of a human, and the particular type of any human blood.

He testified that there were reddish-brown stains on the blue dress which he identified as human blood. One of these stains which he tested was too small and the other too badly contaminated for blood type or grouping tests to be made.

Two reddish-brown spots appeared on the pink dress. These stains were caused by human blood, which was type "O".

Both dresses have other stains upon them and their appearance indicates they may be due to the presence of vomitus.

There is no evidence as to the slippers, taken from the storeroom, or the corduroy

coveralls, taken from the bathroom, which could possibly be considered as connecting them in any way with the child, except for the above recited testimony of the officer and the fact that the special agent found human blood on the sole of each of the slippers and light stains of human blood on the corduroy coveralls. The blood on neither the slippers nor on the coveralls was suitable for grouping tests. The coveralls did have other stains upon them which might be due to vomitus.

The newspaper, dated January 19, 1967, was picked up some place in the house and has reddish-brown stains on it which were identified as type "O" human blood.

A reddish-brown stain appears along one edge of the bedspread, and this stain was identified as type "O" human blood. This bedspread also has stains upon it, which may be due to vomitus.

The scrapings of paper from the walls in the hallway of the home were identified as being stained with type "O" human blood. There is evidence that the child was in this hallway after she sustained a bloody nose, and there is evidence that she was against one wall of this hallway.

The other items consist of clothing taken from defendant's person after his arrest, so there is no question about their identification with the defendant. One of these exhibits is the defendant's shoes. On one of these shoes type "O" human blood appeared on the top and on the instep portions thereof.

Another item was a white T-shirt on which three minute blood stains appeared near the top and at the front. These were identified as human blood but they were insufficient for grouping tests.

Another item was a pair of black trousers. On the right cuff of these trousers appeared a stain which was identified as type "O" human blood.

The last item received into evidence was a red shirt marked with minute stains, which were identified as human blood, but which were insufficient for grouping tests.

There is no question that the child sustained a bloody nose, either by falling to the floor from the couch, by reason of being pushed or pulled by defendant, or by colliding with the washbasin in the bathroom. There is no evidence as to the child's blood type, and the evidence is that 45% of all Americans have type "O" blood.

There is also no question that defendant struck the child with his clenched fists and that he kicked her. He gave a written confession to this effect which was received into evidence and read to the jury prior to any reference being made to the exhibits in question. He also testified in his own defense and again admitted the beating. His version of the evidence differs some from the testimony of the ten year old girl, who was the only other witness who testified who was present during the beating. Both the girl and the defendant testified the child was bleeding from her nose. He says the child began bleeding when he pushed or pulled her from the couch. The ten year old sister says the baby began bleeding from the nose as a result of bumping herself on the washbasin in the bathroom.

In any event, there is no doubt the child was at some time bleeding from the nose, and there is no doubt that defendant administered the beating which resulted in the child's death. The crucial question in the case was the intent and mental state of the defendant at the time.

■■ We find no merit to defendant's contention, that no proper chain of custody was established, and that the evidence failed to show that the condition of the exhibits had remained unchanged from the time of the commission of the crime until their introduction into evidence. No objection on these grounds was ever made, and, therefore, no ruling or decision of the trial court thereon was ever fairly invoked. Thus, these questions cannot be first raised on appeal. Supreme Court Rule 20 (§ 21–2–1 (20), N.M.S.A. 1953); State v. Brewer, 77 N.M. 763, 427 P.2d 272 (1967); Batchelor v. Charley, 74 N.M. 717, 398 P.2d 49 (1965); State v. Lott, 73 N.M. 280, 387 P.2d 855

(1963); State v. Knerr, 79 N.M. 133, 440 P.2d 808 (Ct.App.1968). The general objection as to lack of proper foundation did not include these grounds of objection, because it failed to alert the trial court to the nature of the objections which are now being urged upon us. See State v. La Boon, 67 N.M. 466, 357 P.2d 54 (1960); State v. Lewis, 36 N.M. 218, 12 P.2d 849 (1932); State v. Trujillo, 30 N.M. 102, 227 P. 759 (1924); Henderson v. Dreyfus, 26 N.M. 541, 191 P. 442 (1919).

We are of the opinion that defendant's objections, that no proper foundation was laid and that the exhibits did not tend to prove any element of the crime, were well taken, at least as to some of the exhibits.

As above stated, the only evidence as to any bleeding by the child concerned some bleeding from her nose, and the injury sustained to her nose was minor and in no way contributed to her death. The beating to her abdomen, which resulted in a rupture of the small intestine and finally in her death, caused no external bleeding, and there was no question that defendant administered the beating. There is no question that the child vomited after the beating and continued to vomit thereafter until her death. The evidence also points rather clearly to the fact that the child had been vomiting to some extent for some time prior to her beating and that this was connected with her illness from chicken pox.

Insofar as a foundation or identification of the exhibits is concerned, in order to establish the requisite relevancy, sufficient to permit their proper admission, they should in some manner have been shown to be connected with the defendant, the child, or the crime itself. See 2 F. Wharton, Criminal Evidence § 675 (12th ed. 1955); Smith v. United States, 157 F.2d 705 (D.C. Cir.1946); State v. Story, 208 Or. 441, 301 P.2d 1043 (1956); Annot., 68 A.L.R.2d 903, 936 (1959).

■■ Insofar as the clothing taken from defendant is concerned, there is no difficulty in connecting these exhibits with him. We are of the opinion that the evidence is sufficient to connect the two dresses and the bedspread with the child at or so near the time of the crime as to warrant their admissibility, even though they were not positively identified as being connected with her. There is also sufficient evidence to connect the scrapings of wallpaper to the child through the blood thereon, because there is evidence she was bleeding from her nose, was against one of the walls in the hallway, and at this point was kicked by defendant and caused to fall. In identifying the place from which these scrapings were taken, the officer made gestures indicating the location on a rough sketch of the floor plan of the house. We are unable to tell from the record just where in the hallway and from which wall thereof the scrapings were taken. The trial court was present, heard the testimony, and observed the gestures. Thus, we hold that a sufficient foundation was laid for the admission of these scrapings.

■ However, we are of the opinion that the purported identification of the slippers, the corduroy coveralls, and the newspaper is wholly insufficient to connect them with the child or with the crime itself and were improperly admitted.

Real evidence, such as the exhibits here in question, is:

"* * * admissible to show the commission of the crime charged; to connect the accused with the commission of the crime; to show fingerprints, palmprints, or footprints in order to establish the identity of the wrongdoer; to illustrate, explain, or throw light on the criminal transaction; to show that a person accused of homicide was armed when he went to the scene of the crime; to show malice, knowledge and preparation, purpose, intent, or a lustful disposition; to show the ability to commit a crime; to show the nature and location of a wound; to show the ownership and value of stolen property; to corroborate a witness, or admissions of the defendant; to contradict the defendant's theory of self-defense by showing that the victim's skull

had been crushed by the use of excessive force, that defendant had acted in self-defense, or that the victim's gun had not been discharged; and to contradict the defendant's testimony."

2 F. Wharton, Criminal Evidence § 673 (12th ed. 1955).

The dresses, the bedspread, the scrapings from the wall, and possibly defendant's shoes and trousers have some relevancy upon one or more of these purposes for which such evidence may properly have been admitted, but under the facts and circumstances of this case we are unable to understand what relevancy the other exhibits could have had to any question or issue which would have warranted their reception into evidence.

■ However, we have carefully examined the entire record and all the exhibits, and are unable to perceive how these improperly admitted exhibits could have prejudiced the defendant's rights.

They show nothing which was not clearly shown by the other exhibits; they in no way contradict or controvert any material contention made by defendant; and, viewing the evidence as a whole, they in no way shed any light upon defendant's intent or mental state at the time. In our opinion, these exhibits could not possibly have excited or inflamed the minds of the jurors beyond the degree to which they were excited and inflamed by the properly admitted exhibits and the other evidence as to the beating and kicking of the child. The evidence, exclusive of the improperly admitted exhibits, points so overwhelmingly to the guilt of defendant of the crime of which he was convicted, that there is no reasonable possibility that the admission into evidence of these improperly received exhibits contributed to his conviction. Under these circumstances, the defendant is not entitled to a new trial. See Rice v. United States, 149 F.2d 601 (10th Cir.1945); Dean v. Hocker, 436 P.2d 427 (Nev.1968); State v. Williams, 76 N.M. 578, 417 P.2d 62 (1966); State v. Coyle, 39 N.M. 151, 42 P.2d 770 (1935); State v. Pruett, 22 N.M. 223, 160

P. 362, L.R.A.1918A, 656 (1916); State v. Pope, 78 N.M. 282, 430 P.2d 779 (Ct.App. 1967).

The judgment and sentence should be affirmed.

It is so ordered.

SPIESS, C. J., and WOOD, J., concur.