450 P.2d 927

**STATE of New Mexico, Plaintiff-Appellee,**
**v.**
**Ernest E. EVERITT, Defendant-Appellant.**
**No. 196.**

Court of Appeals of New Mexico.
Feb. 7, 1969.

Clifford L. Payne, C. Gene Samberson, Heidel, Swarthout & Samberson, Lovington, for defendant-appellant.

Boston E. Witt, Atty. Gen., James V. Noble, Asst. Atty. Gen., Sante Fe, for plaintiff-appellee.

## OPINION

WOOD, Judge.

Convicted of four felonies and a misdemeanor, defendant appeals. He questions the admissibility of certain evidence, claiming (a) an illegal search and seizure and (b) that certain exhibits inflamed and prejudiced the jury against him. Defendant also claims that imposition of five sentences, to run consecutively, amounts to double punishment.

A truck driver for a produce company was unloading goods at a grocery store during the early morning hours. He heard a door slam and noticed a blue and white Pontiac which he took to be a 1955, 1956 or 1957 model. He drove less than three blocks to a telephone and called the Sheriff's office, reporting the noise he had heard and the car he had seen.

The deputy who took the call immediately radioed the information received from

the truck driver to city police officers. One officer arrived at the grocery store in about a minute. He saw a car, which appeared to answer the car described in the radio message. This car was one-quarter of a block away and traveling rapidly. The officer moved in behind it with red light and siren. The car stopped five or six blocks from the grocery store. It was a blue and white 1958 Pontiac.

The truck driver saw the officer give chase to the 1958 Pontiac, and saw this car stop after being chased by the officer. He testified that it looked like the same car he had seen earlier.

Three men got out of the Pontiac. They were told to place their hands on the hood of the police car in order to be searched. Another officer had arrived at this point. The second officer covered the three men while the first officer searched them. In addition, the first officer "visually searched" the inside of the Pontiac. He saw a prybar and a suitcase on the back seat; a pair of black shoes and a shaving kit on the floor of the back seat. At this point the first officer removed a hunting knife and its sheath from the glove compartment of the Pontiac.

The three men were then arrested. To secure the three men, and for the safety of the two officers, the arrested men were placed in the first officer's vehicle (two in the back, one in the front) and taken to the police station. The second officer followed in his car. The second officer proceeded with "booking" the three men. The first officer went to the grocery store to verify the burglary, then returned to the Pontiac. The time interval from the arrest until the officer returned to the Pontiac was approximately ten minutes.

The first officer was joined by a deputy sheriff. The two searched the car "thoroughly". The shaving kit contained two loaded .38 revolvers. The trunk of the Pontiac was unlocked and a large amount of burglary tools was observed—prybars, cutting torches, etc. The loaded revolvers were taken from the car at this time. The

car and its contents was removed to a garage by a wrecker.

Later the same morning, photographs were taken of the car and its contents and the remaining evidentiary items were removed from the car. At the time this was done, the officers had a search warrant.

*The search and seizure claim.*

Defendant moved to suppress "all of the exhibits" on the basis that they had been obtained by an illegal search and seizure. Counsel for defendant and for the state represented to the court what the evidence would show. On the basis of these representations the trial court denied the motion. At trial, the trial court allowed defendant a continuing objection to admission of the exhibits. The appeal is the first time that defendant has specifically identified twenty-two of the twenty-four exhibits questioned in this appeal. Since the defendant raised the search and seizure question as to *all* exhibits, we assume, but do not decide, that the claim of illegal search and seizure is properly before us.

The twenty-four exhibits in question group into four categories. One category consists of five exhibits—1–B is a prybar, 11 is an oxygen tank, 14 is a tank and hose, 39 and 40 are sections of a door frame. These five exhibits were identified as coming from the grocery store that was burglarized. Defendant's search and seizure claim is based on items taken from the Pontiac. Since these five exhibits were not taken from the Pontiac, they simply are not involved in the search and seizure claim raised by defendant.

The second category is exhibit 1—the hunting knife and sheath taken from the glove compartment of the Pontiac. The exhibit was taken after the Pontiac had stopped, the three men had gotten out of the car and had been searched but before they had been formally placed under arrest.

Defendant does not claim that the officer lacked probable cause to arrest him. The facts—the radioed report to the

officer, the car apparently matching the radioed description of the car in the vicinity of the grocery store, the car rapidly leaving the scene—show there was probable cause for an arrest. Accordingly, if the search, with resultant seizure of exhibit 1, had occurred contemporaneously with or immediately subsequent to the arrest, there would be no question that seizure of exhibit 1 was valid. State v. Deltenre, 77 N.M. 497, 424 P.2d 782 (1966). However, the seizure occurred prior to the formal arrest.

■■ We do not determine whether the seizure prior to the formal arrest was an incident to that arrest. See State v. Deltenre, supra. The ultimate question is whether the search and seizure was reasonable. See Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). Reasonableness must be determined on the basis of the facts of the case. State v. Aull, 78 N.M. 607, 435 P.2d 437 (1967). Under the facts of this case, we do not consider the search and seizure of exhibit 1 to be unreasonable. Compare State v. Aull, supra

■ The third category consists of the items seen by the officer at the time of his "visual search". The officer stated that his purpose in looking in the car was to search for weapons. He saw exhibit 2—a shaving kit, exhibit 5—a part of shoes and exhibit 6—a prybar. His "search" wasn't unreasonable.

■ However, exhibits 2, 5 and 6 were not seized at that time. They were not taken from the Pontiac until after it was stored in the garage. This was several hours later. When they were removed, they were taken under authority of a search warrant. No claim is made that this search warrant was invalid. There is no "poisoned fruit" question as to this category since the initial "search" was reasonable and the seizure was under authority of a search warrant. Compare Wong Sun v. United States, 371 U.S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441 (1963).

■ Category four consists of the remainder of the twenty-four exhibits. These exhibits were discovered by officers who searched the Pontiac after defendant had been taken to the police station and before the Pontiac had been moved. The officers removed exhibits 3 and 4 (the loaded revolvers) at the time of this search. The rest of the exhibits in this category were not removed until the car was at the garage. Although removed under authority of a search warrant, the fact of the search warrant does not solve the question of illegal search and seizure. If the search which discovered these exhibits was unreasonable, then the subsequent seizure is the fruit of that illegal search—the search warrant could not validate a prior illegal search. See Wong Sun v. United States, supra; Boyd v. State, 290 P.2d 160 (Okl.Crim.App. 1955).

■ Was the search of the Pontiac unreasonable? Two officers had three men under arrest. They could have searched the Pontiac at this time. However, they were faced with keeping these men in custody and also with continuing their investigation. They took the men to the police station; one officer remained with the men, the other returned to the Pontiac within ten minutes. The car had not been moved.

The fact that defendant was not present when the search occurred does not make the search unreasonable. Crawford v. Bannan, 336 F.2d 505 (6th Cir. 1964); see State v. Perez, 79 N.M. 417, 444 P.2d 602 (Ct.App. 1968). The fact that the officer went by the grocery store before returning to the car does not make the search unreasonable. The officer's trip by the grocery store before returning to the car was part of a continuing series of events. State v. Perez, supra. The fact that the car was unattended for ten minutes did not make the search unreasonable. See Anno. 19 A. L.R.3d 727, 754. The fact that the car had been unattended might raise questions in connecting defendant with items found in the search, but no such issue is presented.

On the facts here presented, we hold that the search was an incident to defendant's arrest. Compare State v. Barton, 79 N.M. 70, 439 P.2d 719 (1968).

The search being an incident to defendant's lawful arrest, and not being unreasonable as a matter of law, the seizure of the items in this category under a search warrant was not "poisoned fruit".

### The claim that exhibits inflamed and prejudiced the jury.

Defendant asserts that five exhibits were neither relevant nor material to the crimes charged and were introduced "* * * to influence, inflame and prejudice * * *" the jury against him. On this basis, defendant contends that the trial court erred in admitting these exhibits.

■ The exhibits are 1, 2, 3, 4 and 53. The only specific objection made during the course of the trial was to exhibit 53, which was identified as a specially made up burglary tool used as a safe punch. Defendant claimed that exhibit 53 was irrelevant and immaterial because there was no evidence that a safe had been opened during any of the burglaries. This argument overlooks the fact that defendant was charged with possession of burglary tools. Exhibit 53 was material to that charge. No question is presented as to whether the admission of exhibit 53 should have been limited to the burglary tool charge.

■ Thus, defendant's contentions under this point are based on his motion to suppress. In that motion he objected to all exhibits on the basis of the asserted illegal search and seizure. Defendant did not, in the motion, claim that exhibit 1—the hunting knife and sheath, exhibit 2—the shaving kit and exhibit 53—the safe punch, would inflame or prejudice the jury. Not having been presented to the trial court, the objection as to these three exhibits cannot be raised here for the first time. Section 21–2–1(20) (2), N.M.S.A.1953; State v. Gray, 79 N.M. 424, 444 P.2d 609 (Ct.App. 1968).

■ Defendant did claim, in the motion to suppress, that exhibits 3 and 4 would inflame and prejudice the jury against him. Exhibits 3 and 4 are the two loaded revolvers found in the shaving kit. Although proof concerning the revolvers was not essential to establish any of the five charges, nevertheless we are of the opinion that they were relevant and material to the question of defendant's intent and his preparation in connection with the three burglary charges and the charge of attempting to commit a burglary. 1 F. Wharton, Criminal Evidence §§ 164 and 193 (12th Ed. 1955); see State v. Gray, supra. Being admissible for this purpose, the admission of the exhibits was not prejudicial to defendant's rights even, if as alleged, they may have had some inflammatory effect. State v. Gray, supra.

### The claim of double punishment.

Defendant was convicted of the burglary of three separate businesses, of an attempt to commit a felony (attempted burglary of a fourth business) and of possession of burglary tools. All the offenses were committed on the same day. A separate sentence was imposed for each offense; the sentences are consecutive. Defendant claims that the sentences amount to double punishment and thus violate our constitutional provision concerning double jeopardy. N.M.Const. Art. II, Sec. 15; see State v. McAfee, 78 N.M. 108, 428 P.2d 647 (1967); State v. Quintana, 69 N.M. 51, 364 P.2d 120 (1961).

■ Whether defendant may be sentenced for each of his five crimes depends upon whether any one of the crimes has merged with any other of the crimes. If there has been a merger, defendant may not be sentenced for the merged offense. State v. Blackwell, 76 N.M. 445, 415 P.2d 563 (1966); State v. Quintana, supra. The test of merger is whether one of his crimes necessarily involves another of his crimes. State v. Eckles, 79 N.M. 138, 441 P.2d 36 (1968); State v. McAfee, supra.

As stated in State v. Martinez, 77 N.M. 745, 427 P.2d 260 (1967):

> "The test of whether one criminal offense has merged in another is not, as defendant contends, whether the two criminal acts are successive steps in the same transaction but whether one offense necessarily involves the other. * * *"

Defendant does not claim that he may not be sentenced for the three burglaries. He claims that he may not be sentenced for a burglary and for possession of burglary tools.

Our burglary statute, § 40A–16–3, N.M. S.A.1953 (repl.vol. 6) reads in part:

> "Burglary consists of the unauthorized entry of any * * * dwelling or other structure * * * with the intent to commit any felony or theft therein."

Our burglary tool statute, § 40A–16–5, N.M.S.A.1953 (repl.vol. 6), reads in part:

> "Possession of burglary tools consists of having in the person's possession a device or instrumentality designed or commonly used for the commission of burglary and under circumstances evincing an intent to use the same in the commission of burglary."

▮ The definitions of the two crimes show that possession of burglary tools is not necessarily involved in burglary. To violate § 40A–16–5, supra, one must have the burglary tools in one's possession "* * * under circumstances evincing an intent to use the same in the commission of burglary." Compare State v. Lawson, 59 N.M. 482, 286 P.2d 1076 (1955). Burglary tools are admissible in evidence in a prosecution for burglary. Sanders v. United States, 238 F.2d 145 (10th Cir. 1956). But it is not necessary to have burglary tools in one's possession to violate § 40A–16–3, supra. The crime of burglary is complete when there is an unauthorized entry with the necessary intent. State v. McAfee, supra. One can make such an unauthorized entry with the necessary intent either with or without burglary tools.

▮ The crime of possession of burglary tools did not merge with the crime of burglary. Defendant's sentence for each of these crimes did not constitute double punishment.

Defendant also claims that the crime of an attempt to commit a felony (burglary of a fourth business) merged with the crime of possession of burglary tools.

Our attempt statute, § 40A–28–1, N.M. S.A.1953 (repl.vol. 6), reads in part:

> "Attempt to commit a felony consists of an overt act in furtherance of and with intent to commit a felony and tending but failing to effect its commission."

▮ Again, the definitions of the two crimes show there was no merger. The "overt act" required in the attempt statute did not necessarily involve possession of burglary tools. The crime of attempt to commit a felony did not merge with the crime of possession of burglary tools. Defendant's sentence for each of these crimes did not constitute double punishment.

▮ Defendant's remaining contention is based on the fact that his "attempt" conviction is, in this instance, a misdemeanor, and the other four convictions are felonies. He asserts that it was improper to charge the misdemeanor and the felonies in the same criminal information. Neither § 41–6–6, N.M.S.A.1953 (rep.vol. 6) nor § 41–6–7, N.M.S.A.1953 (repl.vol. 6) limit a criminal information to only felonies or misdemeanors. Section 41–6–38, N.M.S.A. 1953 (repl.vol. 6) states that an information shall not be invalid or insufficient because of a misjoinder of the offenses charged. Further, the claim of misjoinder was not presented to the trial court; it cannot be raised here for the first time. State v. Gray, supra; State v. Sweat, 78 N.M. 512, 433 P.2d 229 (Ct.App. 1967).

The judgment and sentences are affirmed.

It is so ordered.

OMAN and HENDLEY, JJ., concur.