458 P.2d 851

STATE of New Mexico, Plaintiff-Appellee,

v.

Juan Jose LOPEZ, Defendant-Appellant.

No. 276.

Court of Appeals of New Mexico.

June 20, 1969.

Rehearing Denied Aug. 8, 1969.

Certiorari Denied Sept. 17, 1969.

**600**

James A. Parker, Modrall, Seymour, Sperling, Roehl & Harris, Albuquerque, for appellant.

James A. Maloney, Atty. Gen., Santa Fe, Oliver H. Miles, Asst. Atty. Gen., for appellee.

## OPINION

HENDLEY, Judge.

Defendant appeals from a conviction of aggravated burglary, armed robbery and rape.

Defendant's counsel relies on five points of error for reversal and has additionally included thirteen points of error at the specific direction of defendant. See State v. Franklin, 78 N.M. 127, 428 P.2d 982 (1967).

1. Defendant contends the trial court erred in permitting a State's witness to testify about defendant's subsequent criminal acts.

Generally, evidence of a distinct criminal offense independent of the offense with which defendant is charged and for which he is being tried is inadmissible. State v. Velarde, 67 N.M. 224, 354 P.2d 522 (1960); State v. Nelson, 65 N.M. 403, 338 P.2d 301 (1959), cert. denied, 361 U.S. 877, 80 S.Ct. 142, 4 L.Ed.2d 115 (1959); State v. Mason, 79 N.M. 663, 448 P.2d 175 (Ct.App. 1968). However, there are exceptions to this rule, one of which is when the independent offense tends to establish the identity of defendant. State v. Lord, 42 N. M. 638, 84 P.2d 80 (1938); State v. Bassett, 26 N.M. 476, 194 P. 867 (1921); State v. Gutierrez, 79 N.M. 732, 449 P.2d 334 (Ct. App.1968). The probative force of such evidence must bear directly on some material element of the crime with which the defendant is charged. Evidence of this nature should not be received when the overwhelming result would be nothing more than establishing defendant's bad character or his disposition or propensity to commit crime. State v. Mason, supra.

On October 3, 1967, a man broke into the home of Mr. and Mrs. R. He assaulted

Mr. R., a semi-invalid, with a knife, took two one dollar bills and a five dollar bill, and Mr. R.'s initialed flashlight. During the assault the assailant stated, "I'm a nigger." The assailant then went to Mrs. R.'s separate bedroom and raped her at knife point. The assailant again said, "I'm a nigger." At no time were Mr. and Mrs. R. ever able to see the assailant. The rooms were dark and the assailant shone the flashlight in their eyes the remainder of the time. They could only say he had on a light shirt and spoke with a Spanish accent.

About an hour or so later, approximately five blocks from Mr. and Mrs. R.'s home, an unknown assailant entered the bedroom of Miss P. and raped her twice at knife point. The room was dark and the assailant flashed a light in Miss P.'s eyes so she could not see. The assailant spoke with a Spanish accent. The assailant once alluded to the fact he "could be colored." The assailant passed out and Miss P. ran next door and called the police. When the police arrived they found defendant partially undressed in Miss P.'s bed. A blood-stained knife was on the bed, Mr. R.'s flashlight was on the floor, defendant's trouser pocket contained a five and two one dollar bills and defendant's shirt had blood spots which were subsequently identified as type O. Mr. R. had type O blood and defendant had type A.

■ Defendant's trial counsel made strenuous objection both before and during trial that Miss P.'s testimony was extremely inflammatory, prejudicial and extraneous to the case. These objections were overruled and properly so. The testimony went to identity. See Nester v. State, 75 Nev. 41, 334 P.2d 524 (1959); compare People v. Diaz, 66 Cal.2d 801, 58 Cal.Rptr. 729, 427 P.2d 505 (1967).

Defendant also contends that even if this testimony went to identity it was merely cumulative of other evidence and should not have been admitted. Morgan v. United States, 355 F.2d 43 (10th Cir. 1966), cert. denied 384 U.S. 1025, 86 S.Ct. 1976, 16 L.

Ed.2d 1029 (1966); State v. Mason, supra. Although there was other circumstantial evidence of the identity of defendant the testimony of Miss P. was not cumulative, as defendant contends. Miss P.'s testimony served to show defendant's possession of the knife and flashlight. It was necessary to show defendant's possession of these items in order to establish his identity as Mr. and Mrs. R.'s assailant. The testimony also established identity by characteristic conduct, Nester v. State, supra; and in this respect there was no other evidence. It was proper to go into the details of the rape of Miss P. in order to establish both characteristic conduct and defendant's possession of the knife and flashlight.

*2.* Defendant next contends the trial court committed error in permitting the prosecution's expert medical witness to express an opinion that the defendant was not committable to a mental institution.

Prior to this statement the medical expert testified that defendant had no mental disease either at the time of the commission of the criminal act or at the time of trial. The reason for testimony concerning defendant's mental condition at the time of trial was because the medical expert's examination had been primarily to determine defendant's present competency to stand trial. See § 41–13–3.1, N.M.S.A.1953 (Repl. 1964, Supp.1967). No objection was entered as to this testimony. The following question and objection then occurred:

"Q. And in view of your opinion that he is not suffering from any kind of mental disease, then he would not be committable to a mental institution, is that correct?

"MR. ROBB: We object to that. It is irrelevant and immaterial.

"THE COURT: Overruled.

"Q. Is that correct, Dr. Penley?

"A. On the basis of the diagnosis I gave him, in my opinion, Mr. Lopez would have no reason to be sent to a mental institution, since I feel he does not have a mental disease."

Standing alone as an isolated statement this testimony could be prejudicial, however, when viewed in the total of the expert's testimony such is not the case. The testimony could have been taken as merely referring to defendant's present competency to stand trial; a matter about which the witness was being questioned. To give credence to defendant's argument that the testimony implied to the jury that it must not acquit defendant by reasons of insanity, because if defendant was not committable he would be free to roam the streets and menace other women without restraint, would be to go far beyond the actual testimony. Even if we were to agree that the trial court erred in admitting this testimony over objection, in our opinion it was harmless in the light of the overwhelming evidence of defendant's guilt. See State v. Gray, 79 N.M. 424, 444 P.2d 609 (Ct.App. 1968).

We do not feel, as defendant, that the cases of Farris v. Commonwealth, 209 Va. 305, 163 S.E.2d 575 (1968) and State v. Nickens, 403 S.W.2d 582 (Mo.1966) apply. They are distinguishable because in both cases the evidence admitted was directly concerned with the future conduct of the defendants and was highly prejudicial. Such was not the case here.

In addition the trial court gave a limiting instruction as follows:

"13. You are not to consider in arriving at your verdict whether the defendant is or is not dangerous to himself or to society nor what the consequences of your verdict might be. If you should decide from the instructions and evidence that the defendant was insane at the time of the alleged commission of the offenses, then it will be your duty to bring back a verdict of 'not guilty by reason of insanity at the time of the alleged offenses,' regardless of whether or not you believe that the defendant may or may not be dangerous."

As to the legal effect generally given to such limiting instructions, see Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed. 2d 606 (1967); State v. Long, 49 N.M. 57, 157 P.2d 236 (1944).

3. Defendant next contends the State failed to meet its burden of proving beyond a reasonable doubt that defendant was legally sane at the time of the commission of the offense. We cannot agree.

One accused of a crime is presumed to be sane. However, if the defendant introduces competent evidence reasonably tending to support insanity at the time of the alleged offenses then an issue is raised as to the mental condition of the accused. It then becomes the duty of the jury to determine the issue from the evidence independent of the presumption of sanity. However, if the jury disbelieves the evidence as to defendant's claimed insanity, then the presumption stands. State v. Moore, 42 N.M. 135, 76 P.2d 19 (1938).

Defendant mistakes quantum of proof for quality of proof. Defendant presented two doctors who testified that defendant was not sane at the time of the commission of the crimes. The State presented one medical expert who said defendant was sane at the time of the commission of the offenses. This medical expert not only had examined defendant, but had the benefit of the reports of defendant's psychiatrist and psychologist. This expert testimony was certainly affirmative evidence of sanity. The jury determines the weight and credibility of the evidence. See State v. Hudson, 78 N.M. 228, 430 P.2d 386 (1967); compare State v. Moore, supra.

Defendant contends that the opinion of the State's expert was predicated on the testimony and reports of other witnesses. Reading the record as a whole the State's medical expert stated that after listening to the other experts' testimony he had not changed his opinion, which resulted from an independent investigation. Defendant's contention is not well taken.

4. Defendant next contends the trial court committed reversible error by ad-

-mitting evidence of defendant's blood test because:

    a.  the blood was taken without due process of law;

    b.  the manner in which the blood was taken constituted an illegal search and seizure;

    c.  and defendant was denied his constitutional right to counsel when the blood was taken.

The prosecution and defense attorneys had agreed that defendant could undergo a neurological and psychiatric examination. Shortly before going for that examination, on oral motion of the prosecutor, an ex parte order was issued by the court ordering defendant to submit to a blood test. This was done without the consent of defendant or knowledge of his trial attorney. The blood test was made at the time of the neurological examination by a clinical biochemist in the hospital.

Consideration is first given to the claims of denial of due process of law and freedom from unlawful searches and seizures. Defendant states in his brief-in-chief:

" *  *  *  All that could possibly be shown by introducing evidence of the defendant's blood type was that the blood on his shirt was of a different type. This adds little, if anything, to the proven fact that blood of [Mr. R.'s] * * * type was found on the defendant's shirt. The defendant never contended that the blood on his shirt was his own * * * [T]he District Attorney had available other considerably stronger circumstantial evidence of identity involving the knife and [Mr. R.'s] * * * flashlight and money found in defendant's possession. This demonstrates further how insignificant and unessential it was to the prosecution's case to prove the defendant's blood type."

█ There was other stronger evidence of defendant's identity which was admitted without objection. Defendant did not deny any of the evidence going to his identity. In viewing the record as a whole it is obvious that the admission of the blood test results did not contribute to defendant's conviction. See Commonwealth v. Gordon, 431 Pa. 512, 246 A.2d 325 (1968); Dampier v. State, 180 So.2d 183 (Fla.App.1965).

As we stated in State v. Gray, supra:

" *  *  *  The evidence, exclusive of the improperly admitted exhibits, points so overwhelmingly to the guilt of defendant of the crime of which he was convicted, that there is no reasonable possibility that the admission into evidence of these improperly received exhibits contributed to his conviction. Under these circumstances, the defendant is not entitled to a new trial." (Citations omitted).

Both appellant and appellee cite Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957) and Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed. 2d 908 (1966) in support of their contentions. Both of these cases involve blood-alcohol tests performed on drivers suspected of being intoxicated. Because of the effectiveness of the blood-alcohol test in determining intoxication, the introduction of such a test, in a situation where guilt was related to intoxication, would almost certainly "contribute to the conviction." But see Annot. 87 A.L.R.2d 370, § 8 at 389 (1963). As was stated in Schmerber v. California, supra:

" *  *  *  Extraction of blood samples for testing is a highly effective means of determining the degree to which a person is under the influence of alcohol. * * *"

In the instant case, however, the other circumstantial evidence was overwhelming in establishing identity. While in the blood-alcohol test cases the possibility of considering introduction of the test as harmless error would seem slight, here, the introduction of the blood test was harmless error.

As a further indication of the harmlessness of the admission of the results of the test performed on appellant is the fact, as pointed out in the previously quoted portion of appellant's brief-in-chief, that ap-

pellant never contended that the blood on his shirt was his own. See State v. Gray, supra; compare Creasy v. Leake, 292 F. Supp. 195 (W.D.Va.1968).

Appellant's argument as to denial of his right to counsel goes to the time the order for the blood test was granted by the court. Appellant contends that the obtaining of this order was a critical stage of his criminal prosecution and that he was therefore entitled to counsel at the proceeding at which the order was granted. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Since the end result (introduction of the testimony concerning the blood test) was, as a matter of law, harmless error, then the denial of right to counsel was also harmless beyond a reasonable doubt. See Ruona v. United States, 403 F.2d 215 (9th Cir. 1968). Counsel's absence did not "derogate from the accused's right to a fair trial." United States v. Wade, supra.

5. Defendant contends that his conviction must be reversed because the jury failed to determine the issue of insanity at the time of the commission of the crime by a special verdict as required by statute and by the Fourteenth Amendment of the United States Constitution.

Section 41–13–3, N.M.S.A.1953 (Repl. 1964, Supp.1967) states in part:

" * * * When the defense of 'not guilty by reason of insanity at the time of commission of an offense' is raised upon trial, the issue shall be determined * * * in jury trials by a special verdict of the jury. * * *"

The court read eight forms of verdict to the jury at the close of the trial among which were the following:

"The first: We, the jury, find the defendant guilty of Counts 1, 2 and 3 as set forth in the Indictment.

* * * * * *

"The eighth: We, the jury, find the defendant not guilty of Counts 1, 2 and 3 by reason of insanity at the time of the commission of the offenses."

The court had instructed that if the jury found that defendant committed all three offenses, and, a) if they had a reasonable doubt as to defendant's sanity at the time of the commission of the offenses or, b) if defendant was insane at the time of the commission of the offenses then only the eighth form of verdict need be signed.

Appearing in the transcript is the following special verdict form:

"We, the Jury, find the defendant to have been insane at the time of the alleged commission of the offenses charged in the Indictment.

"(Answer yes or no)_____"

The only possible reference to this special verdict appears in the court's instruction number 5 which stated in part:

"Therefore, if you find from the evidence, or if you have a reasonable doubt therefrom, that the defendant was insane at the time of the commission of the acts charged in the information, you will find him not guilty by reason of insanity on the special verdict which will be given to you."

The record does not otherwise indicate whether the special verdict form was submitted to the jury. We will assume it was, but was returned unsigned, along with the other unused forms of verdicts.

Did this failure to answer and return the purported special verdict form constitute reversible error? We think not.

■ Defendant made no objection to any of these quoted instructions nor did he object when the jury returned the verdict of guilty without the purported special verdict. It is first raised here on appeal. Failure to object to instruction waives any errors or defects in the instructions. State v. Lopez, 79 N.M. 282, 442 P.2d 594 (1968); State v. Johnson, 60 N.M. 57, 287 P.2d 247 (1955).

6. Defendant's next thirteen points are raised without arguments.

Points A, B and C go to the lack of substantial evidence to support the verdict of conviction. In determining whether evi-

dence is substantial, on appeal from conviction, the evidence is viewed in a light most favorable to the State and all permissible inferences are indulged in support of the verdict. State v. Lopez, supra; State v. McAfee, 78 N.M. 108, 428 P.2d 647 (1967). The evidence here, even though circumstantial, is substantial. See State v. Deaton, 74 N.M. 87, 390 P.2d 966 (1964). In point C defendant contends the "jury decision was the result of bias and prejudice." Defendant does not say what sort of "bias and prejudice." There is no evidence in the record to support this contention. A mere statement of a conclusion does not suffice to present the question for review. State v. Reyes, 78 N.M. 527, 433 P.2d 506 (Ct.App.1968).

■ Point D states there was error in refusing to grant a mistrial on the basis of one of the juror's having conversed with a prosecution witness during the trial. Rulings of the trial court on motions for mistrial will not be disturbed unless error is manifest, or there is a clear abuse of discretion. State v. Verdugo, 78 N.M. 762, 438 P.2d 172 (Ct.App.1968). After the situation was called to its attention the trial court examined the person who had conversed with the juror. In denying the motion for mistrial, the trial court, in effect, ruled that the presumption of prejudice from such an unauthorized communication was overcome. See State v. Gutierrez, 78 N.M. 529, 433 P.2d 508 (Ct.App. 1967). Considering the non-prejudicial nature of the communication, and the fact that the trial court examined the witness who had spoken to the juror, the trial court's ruling was not erroneous as a matter of law.

Point E states defendant was not indicted by a grand jury, however, such an indictment appears in the record and is regular on its face.

■ Points F and G also relate to defendant's misconception that he was not indicted by a grand jury. The record on appeal is presumed to be accurate and is conclusive on the reviewing court. State

v. Upton, 60 N.M. 205, 290 P.2d 440 (1955). Therefore the record here, which shows a grand jury indictment, regular on its face, is conclusive in showing there is no merit to defendant's points E, F and G. Compare State v. Holly, 79 N.M. 516, 445 P.2d 393 (Ct.App.1968).

Point H states that defendant did not and could not have, at the time of trial, received a fair and unbiased jury trial because of the adverse television, radio and newspapers publicity in Albuquerque, New Mexico. Defendant made no motion for a change of venue so it is assumed that any question relating to change of venue is not involved in this allegation. State v. Chavez, 78 N.M. 446, 432 P.2d 411 (1967) states:

"Defendant has the burden of establishing his claims. * * * If the evidence before the court is accepted as true and that evidence fails to establish the claim made, the failure of proof requires that relief be denied."

■ There is no evidence here that the jury saw, heard or was influenced by any of the publicity mentioned by defendant. The claim fails for lack of proof. State v. Chavez, supra; see State v. Rose, 79 N.M. 277, 442 P.2d 589 (1968).

Points I and L relate to defendant's motion for a new trial but are mere statements of conclusions and do not suffice to present a question for review. State v. Reyes, supra.

■ Point J states that the trial court erred in requiring defense counsel to disclose the contents of a psychiatric report to the prosecuting attorney. The report was the result of a motion by defendant that the court order a mental examination pursuant to § 41–13–3.2, N.M.S.A.1953 (Repl. 1964, Supp. 1967). The district attorney's position on the motion for disclosure was stated as:

" * * * Our position is simply that any time that the defendant is examined under order of the Court, and at the expense of the State, then the State is en-

titled to any memorandum or report made by the examining psychiatrist."

Defendant's position was that the report contained information which would tend to incriminate him and that the report was privileged. It would appear that the State had no other means of obtaining this report than by the motion procedure it followed at trial. Compare State v. Reed, 71 Wash. 2d 550, 429 P.2d 870 (1967). There is no showing from the record that the disclosure of this report in any way constituted a violation of defendant's Fifth Amendment rights. On appeal we will not assume facts not supported by the record. State v. Gutierrez, supra. In dealing with an allegation somewhat similar to this, the court in State v. Gosser, 50 N.J. 438, 236 A.2d 377 footnote 2 (1967), stated:

"* * * The point is completely without substance. This was a commitment to a public institution by court order for essentially a public purpose, no matter who commenced it, and the medical records thereof should be available in advance of trial to both prosecution and defense."

Compare State v. Whitlow, 45 N.J. 3, 210 A.2d 763 (1965).

Point K states that the trial court erred in failing to include in the initial instruction dealing with the elements of the various offenses charged, the element of intent. There is no support for this contention in the record. The offenses were set out in the instructions according to the applicable statutes: § 40A-9-2, § 40A-16-4, § 40A-16-2, N.M.S.A.1953 (Repl. 1964). Instructions which substantially follow the language of the statute are sufficient. See State v. Maestas, 63 N.M. 67, 313 P.2d 337 (1957).

Point M states the five dollar bill and the two one dollar bills were not specifically identified or proven to be the money taken from Mr. R. This claim goes to the weight of the evidence. The reviewing court does not consider the weight of the evidence, but rather determines whether there was substantial evidence to support the verdict. State v. McAfee, supra; State v. Tapia, 79 N.M. 344, 443 P.2d 514 (Ct.App.1968).

The judgment and sentence are affirmed. It is so ordered.

SPIESS, C. J., and OMAN, J., concur.