**UNITED STATES of America, Appellee,**

v.

**Joseph W. PITT, Appellant.**

**No. 10994.**

United States Court of Appeals Fourth Circuit.

Argued April 4, 1967.

Decided Aug. 29, 1967.

Richard K. Jacobsen, Baltimore, Md., (Court-appointed counsel), for appellant.

Theodore R. McKeldin, Jr., Asst. U. S. Atty. (Thomas J. Kenney, U. S. Atty., on brief), for appellee.

Before SOBELOFF, BRYAN and WINTER, Circuit Judges.

SOBELOFF, Circuit Judge:

In a two-count indictment, the appellant, Joseph W. Pitt, was charged with the transportation and concealment of narcotics. A jury convicted him on both counts, and the court sentenced him to ten years on each, the sentences to run concurrently. Before trial, the court held a hearing on the defendant's motion to suppress the evidence seized in a search of the person incident to his arrest. This motion was denied, as well as a request for disclosure of the informant's identity. The motions were renewed without success at the trial.

The facts appear to be undisputed. According to the testimony of Agent Wurms, he received a call on the morning of the arrest from an informant who had contacted him several times in the past and furnished information which, after investigation, was found to be correct. On this occasion, the informant told Agent Wurms that the appellant, a Negro male, and a white male known as "Topper" had left New York City at 2 a. m. and were on their way to Washington, D. C. in a 1963 red Plymouth station wagon bearing Maryland license tag No. BG–1747, and that they were carrying approximately $3,000 worth of heroin. Agent Wurms knew that the appellant had two previous convictions for violating the narcotics laws and that "Topper," whose real name he knew to be Nathan Goldstein, was suspected of involvement in the narcotics traffic. All of this information Agent Wurms imparted to two fellow agents, Worden and Lozowicki, and to an officer of the Baltimore City Police Department at the Harbor Tunnel Police Headquarters. Agents Wurms and Lozowicki checked out the registration of the Plymouth and learned that its owner lived at an address on Glen Avenue. While Agent Worden went to the Harbor Tunnel entrance, Wurms and Lozowicki proceeded to the Glen Avenue residence and found a second automobile parked there, which Agent Wurms recognized as one he and Agent Worden had observed "Topper" driving on a previous occasion. This tended to corroborate the information supplied him by the informant.

Agent Lozowicki then placed a telephone. call to the Baltimore Harbor Tunnel Police Station. Although the substance of the conversation was not revealed at the hearing, the record discloses that following the conversation Wurms and Lozowicki proceeded to the Harbor Tunnel entrance. They arrived shortly after the arrests had been made

by Worden with the help of Harbor Tunnel police.

According to Worden, the arrest was made under the following circumstances. As the automobile matching the description furnished by the informant approached the toll gate, Agent Worden recognized the driver as "Topper," and observed that his passenger was a Negro male. The driver was told to pull over to the side of the road. Worden then identified himself to the occupants and informed them that they were under arrest for violations of the narcotics laws. While the agent searched the driver, several police officers held the appellant, who had started to put up a struggle. During the attempt to restrain him, a package containing a white powder, subsequently analyzed as heroin, fell from Pitt's clothing to the ground.

■ Appellant argues that his arrest and attendant search were without probable cause. His first submission is that there was not sufficient information for a valid arrest. We think that the description of the automobile, including make, model, year, color, license tag number, and state of registration; the approximate time of departure from New York City and hence the expected time of arrival at the Tunnel entrance; the name of one occupant of the automobile, and the nickname of the other—the former having a record of narcotic convictions and the latter personally known to both Agents Wurms and Worden from previous investigations; the information as

to the precise quantity of heroin being transported—all this was sufficient to establish probable cause for the arrest. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

■ Appellant further contends that the agents had no "substantial basis for crediting the hearsay," citing United States v. Ventresca, 380 U.S. 102, 85 S. Ct. 741, 13 L.Ed.2d 684 (1965) and Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) cases which concerned the sufficiency of the affidavit for a search warrant.[1] We think that the information supplied by the informer in the present case was so strongly corroborated as to justify arrest of the passengers in transit. Draper v. United States, 358 U.S. at 313, 79 S.Ct. 329. See also, Ker v. State of California, 374 U.S. 23, 36, 83 S.Ct. 623, 10 L.Ed.2d 726 (1963). Cf. United States v. Ventresca, 380 U.S. at 108, 85 S.Ct. 741; Aguilar v. State of Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

■■ The third ground urged by appellant against the finding of probable cause is that an arresting officer must have *personal* knowledge of the facts constituting probable cause for arrest. Probable cause, however, can rest upon the *collective* knowledge of the police, rather than solely on that of the officer who actually makes the arrest. Smith v. United States, 358 F.2d 833 (D.C. Cir. 1966); United States v. Romero, 249 F.2d 371 (2d Cir. 1957); United States v. Bianco, 189 F.2d 716 (3d Cir. 1951).

---

1. The Bulletin of the Federal Bureau of Investigation has sponsored an article recommending to the Bureau's own officers that in order to establish probable cause when applying to a magistrate for a search warrant where the source of information is a reliable and confidential informant, the officer should

"set out the approximate time the informant got his information, how he [the informant] got it, and the basis for the affiant's belief that the informant is reliable, such as the fact that he had been used for a specified length of time, the approximate number and the types of cases in which he had previously given information, and a state-

ment as to the accuracy of the information given by him in past cases."
Search of Motor Vehicles, FBI Law Enforcement Bulletin, Mar. 1967. We find the suggested procedure commendable and strongly urge adherence to these standards by all government agents in applying for arrest or search warrants. Needless to say, no lesser degree of particularity of information is required in the exceptional case where the exigencies compel arrest or search without a warrant. See, e. g., United States v. Ventresca, 380 U.S. 102, 106, 85 S.Ct. 741 (1965) ; Beck v. State of Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

Cf. Ker v. State of California, 374 U.S. 23, 83 S.Ct. 623 (1963). It was enough that Agent Wurms reported to Agent Worden the substance of his telephone conversation with the informant.

The final contention addressed to us is that the District Court erred in denying the request for disclosure of the informant's identity. In Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed. 2d 639 (1957), the Supreme Court held that where the informer had been the sole participant, other than the accused, in the offense charged, the informer's identity should have been disclosed. However, the Court declined to impose any absolute rule requiring disclosure in all cases.[2] The Court noted that the purpose of the "informer's privilege" was "the furtherance and protection of the public interest in effective law enforcement," but that the invocation of this privilege was limited by the "fundamental requirements of fairness."

> "Where the disclosure of an informer's identity * * * is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.
>
> \* \* \* \* \* \*
>
> [N]o fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. *Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."*

353 U.S. at 60–62, 77 S.Ct. at 628. (Emphasis supplied.)

Roviaro was cited and distinguished by the Court in Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964), pointing out that in the latter case there was no intimation that the informant "had played a direct and prominent part, as the sole participant with the accused, in the very offense for which the latter was convicted." The *Rugendorf* opinion quoted the above-italicized language of *Roviaro* and emphasized that the defendant in *Rugendorf* had not developed the essential criteria.

> "Having failed to develop the criteria of *Roviaro* necessitating disclosure on the merits, we cannot say on this record that the name of the informant was necessary to his defense."

376 U.S. at 535, 84 S.Ct. at 829. See United States v. Whiting, 311 F.2d 191 (4th Cir. 1962). Similarly, the defendant in the present case has asserted no grounds requiring disclosure.[3] On this record we cannot say that the trial judge erred, and certainly this case is not an appropriate vehicle for broad pronouncements on the question of disclosure.

The judgment of the District Court is

Affirmed.

---

2. Roviaro recently was reaffirmed by the Supreme Court in McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). The Court found no constitutional grounds, in the circumstances of that case, for disturbing the evidentiary rule of the State of Illinois concerning the testimonial privilege of informers. Again, the Court avoided laying down a fixed rule requiring or dispensing with disclosure, leaving the matter for determination according to the particular factual context.

3. The following statement of defense counsel appears in the transcript of the hearing on defendant's motion for suppression of evidence:
   "Your Honor, *without presenting any argument*, I would like to go on record requesting that the Government reveal the name and address of the informer." (Emphasis supplied.)
   At the trial, the defendant renewed his request for disclosure, but again made no attempt to develope any of the criteria prescribed in Roviaro.