Jesus **MORENO–VALLEJO**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

**No. 26065.**

United States Court of Appeals
Fifth Circuit.

July 29, 1969.

Eldon Lee Youngblood, Dallas, Tex., court appointed, for appellant.

Morton L. Susman, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for appellee.

Before GEWIN, McGOWAN * and MORGAN, Circuit Judges.

McGOWAN, Circuit Judge:

This is an appeal from a conviction by the District Court, sitting without a jury, of two counts of federal narcotics violations. 21 U.S.C. § 174 and 26 U.S. C. § 4704(a). The only issue, both in the trial court and here, is whether the heroin admitted in evidence was illegally seized in violation of the Fourth Amendment. We do not think the District Court can be said to have erred in its ruling on the admissibility of this evidence; and, accordingly, we affirm the conviction.[1]

I

On July 16, 1967, at 10:00 A.M., an informer known to U.S. Customs Agent James E. Riggs to be reliable, telephoned him and told him that appellant and a companion, Cecilia Martinez-Tullin, were going to Reynosa, Mexico, to purchase a quantity of marijuana or heroin. Short-ly after noon, Riggs learned that they had crossed the border into Mexico.[2] The next day they returned, Martinez first and appellant later; and, on orders from Riggs, were not searched at the border. Agent Van Matre, who had been sent to the border crossing by Riggs to watch for appellant, observed appellant board a bus for McAllen, Texas, followed the bus, but did not see appellant disembark.

The following day, July 18, at 5:00 P.M. the same informer called Riggs again, and told him that appellant and Martinez were in a room at a McAllen motel, and that they either had smuggled narcotics into the country themselves, or were about to receive delivery of them either at the motel or near Raymondville, Texas. Riggs and Van Matre proceeded to the motel, where they observed appellant and Martinez drive away in an automobile at about 10:20 P.M. Riggs and Van Matre followed the automobile and observed it take a circuitous and back-country route toward Raymondville. Appellant did not stop near Raymondville, however but continued to Highway Route 77 and proceeded north towards Kingsville, Texas. As the car neared the Border Patrol Check Station on Route 77, Riggs saw it make a U-turn and come back down the road. Riggs pulled his car over to the side of the road. Shortly after appellant's car passed by Riggs, it made another U-turn and proceeded north to the Check Station.

At the Check Station appellant and Martinez were detained by four U.S. Customs Agents, including Van Matre but not including Riggs, although Riggs had been in radio communication with them and was present "to observe the re-

---

* Judge Carl McGowan of the District of Columbia Circuit, sitting by designation.

1. The evidence at the trial was largely stipulated, and it included by agreement the testimony taken at the hearing of a pretrial motion to suppress, which the court had denied. The parties also stipulated that the issue of guilt or innocence turned solely on the resolution of the search question. At trial the court reaffirmed its earlier decision that the search was valid, and then made a general finding of appellant's guilt of the charges against him.

2. Appellant and his companion, as they were required to do, registered with the border inspectors at their departure point as prior narcotics offenders.

actions" of appellant and Martinez.[3] The agents searched the occupants for weapons, and then searched the automobile "as much as possible as could be done by flashlights." Nothing was found, whereupon the agents took the occupants and their car to a service station in Kingsville, twenty-two miles up the road, where the lighting was better, for a full search of the car. Fifty grams of heroin were found in the left tail light of the car.

## II

Although the District Court professed to believe that the search of appellant's automobile could, without regard to the legality of appellant's arrest, be justified by reference to the doctrine of "border search,"[4] it addressed itself to the evidence in terms of the legality of the search as incidental to the arrest of appellant at the Border Patrol Check Station; and the Government defends the court's action on this appeal in the same terms. Appellant's challenge to the ruling is twofold. He asserts, first, that there was no probable cause to arrest at the time he was detained at the Check Station; and that, even if there were, the search of the automobile at the filling station in Kingsville was too remote in time and place from the arrest itself.

The argument with respect to the first of these propositions centers upon the asserted imprecision of the informant's tips as to when and where appellant actually came into possession of the narcotics.[5] It stresses in this regard that it was reported that appellant might be taking delivery at a point near Raymondville, and yet, although Riggs and Van Matre trailed appellant to Raymondville, appellant admittedly did not stop there. Appellant claims that this circumstance nullified any probable cause that might have been accumulating up to that point.

The Government points out, however, that the tip was in the alternative, saying that appellant was getting the narcotics either at the motel in McAllen, or near Raymondville; and that Riggs, when he saw appellant drive away from the motel, thus had some reason for believing that the narcotics might then be in appellant's possession. This hypothesis was not destroyed, but only strengthened, by appellant's failure to stop at Raymondville. And, as the District Court found, it was all the more confirmed by appellant's curious hesitation about running the risk of going through the Border Patrol Check Station.

The otherwise illogical maneuvers appellant engaged in at that time are largely explainable only in terms of one who, knowing he has contraband narcotics in

---

3. Riggs drove his car up to the Border Patrol Check Station, and observed the happenings there. He had earlier been in radio communication with the Station, asking that additional help be summoned and giving a description of appellant's car. The Check Station itself, and also Kingsville, were in a different customs division from McAllen where Riggs was assigned.

4. The special necessities of customs agents to enforce the custom laws *vis-a-vis* person entering the United States from foreign countries are at the base of the doctrine of "border search." See 19 U.S.C. §§ 482, 1501, 1584; and Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Generally, see Comments, 53 Cornell L.Rev. 871 (1968), and 77 Yale L.J. 1007 (1968).

5. Appellant has not, either in the District Court or here mounted a general attack upon the reliability of the informant. And, of course, the problem here is not that involved in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), where the validity of a warrant procured upon an informer's report was in question. To the extent, however, that *Spinelli* has relevance for the weight to be given informers' information in non-warrant contexts, the case before us would appear to resemble Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), in that the communications received by Riggs about appellant's movements were promptly borne out by the agents' personal observations of appellant.

his possession, first hesitates to face customs agents and then decides that the wiser course is to rely on the artfulness of his concealment of those narcotics. This circumstance, coupled with what was known earlier of appellant's narcotics record, his reported purpose to go to Mexico to get narcotics, his actually making that trip. and his movements upon his return, combine to give a rational basis for belief that appellant was, at the time he drove up to the Check Station, engaged in illicit narcotics activity.

▌Appellant suggests, however, that, even if this is a fair statement of the knowledge possessed by Riggs, it was not Riggs that made the arrest. But we think that a fair reading of this record discloses that appellant's arrest was the result of a genuinely collective effort on the part of all the customs agents involved. The courts have had occasion to recognize that effective police work in today's highly mobile society requires cooperative utilization of police resources. They have, accordingly, asserted that knowledge in one sector of a police system can be availed of for action in another, assuming some degree of communication between the two. *See, e. g.,* United States v. Pitt, 382 F.2d 322 (4th Cir. 1967), where the court said (at p. 324) of a contention that the arresting officer must have *personal* knowledge of the facts constituting probable cause:

> * * * Probable cause, however, can rest upon the *collective* knowledge of the police, rather than solely on that of the officer who actually makes the arrest * * * " (Emphasis supplied).

*See, also,* Smith v. United States, 123 U.S.App.D.C. 202, 358 F.2d 833 (1966).

It was Riggs who got the first lead on appellant, but appellant's movements took him out of the so-called Valley Division, of which Riggs was in charge, and into the Corpus Christi Division, to which the agents at the Check Station were attached. But the record shows that Riggs had enlisted their help and had been in radio communication with them just prior to appellant's arrival at the Check Station. Riggs arrived at the Station at virtually the same time, and the fact that he confined his activities there to observation speaks more eloquently of his deference to geographical lines of authority than it suggests any substantive lack of connection between his presence and the action being taken with respect to appellant and his automobile. We are not prepared, any more than was the District Court, to regard the agents at the Check Station as engaged in a frolic of their own, unrelated to the plan of police work which had been unfolding, under the immediate direction of Riggs, for two days before appellant's arrest.

### III

Appellant's final reliance for the overturn of his conviction is upon the fact that the auto was taken 22 miles from the scene of the arrest before it was subjected to the search which revealed the narcotics. This, so it is said, negated any of the usual justifications advanced for search incident to arrest, (i. e., weapons, destruction of evidence, or the driving of the car out of the jurisdiction), and thereby rendered it necessary for a warrant to have been first obtained. Appellant's invocation of authority in this regard is largely confined to Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). But the extent to which the language of *Preston* perhaps portended a sweep which its peculiar facts did not justify had been noted before the Supreme Court itself restored some measure of perspective in Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).[6] In Cooper, the author of *Pres-*

---

6. Dissenting in Bowling v. United States, 122 U.S.App.D.C. 25, 350 F.2d 1002, 1005 (1965), it seemed to me fair to describe *Preston* in this way:

> *Preston,* it has always seemed to me, is to be read in the light of the central fact that the arrest made there was for vagrancy. It was only after (1) the arrestees had been fruitlessly questioned for some time at the police station, (2) the car had been placed in a garage,

*ton* called attention to its special factual features, and reminded that, however the verbal formulations may vary, the question is, always and ultimately, the reasonableness of the police activity under the circumstances. Judged by that touchstone, we think the District Court was entitled to conclude that the conduct of the agents here did not transgress the Fourth Amendment.

■ Having made a valid arrest on the basis of *probable cause to believe* that narcotics offenses were being committed, the agents could clearly have completed a detailed search of the car at the Check Station. Their testimony was that this would have been done but for the fact that the lighting conditions were such that it was not feasible to make the kind of painstaking and detailed search necessary to find a small cache of narcotics. It was for this reason only that the agents repaired to the next place along the road where the lighting would admit of such care, *i. e.,* the filling station 22 miles away in the next town of Kingsville. The District Court on these findings was, we believe entitled to reject the claim that the agents were acting unreasonably and thereby falling afoul of the command of the Fourth Amendment that searches shall be reasonable.

Affirmed.

and (3) an officer sent to examine it had come back with two loaded revolvers found in the glove compartment, that police were dispatched to the garage with instructions to break into the trunk of the car. It was what was found there that connected the arrestees with the crime of which they were convicted—conspiracy to commit a bank robbery. Thus, the search in *Preston* was used to convict persons arrested for vagrancy, not of having robbed a bank but of intending to do so in the future. It may well be that this all evokes disquieting echoes of what the framers of the Fourth Amendment had in mind, and that the Supreme Court was right in requiring a greater degree of circumspection in the use of search warrants in these circumstances, although the essential rationale of the holding impresses me as lying much deeper than what the Court had to say about the dangers of escape or of assault with concealed weapons. In Adams v. United States, 118 U.S.App. D.C. 364, 336 F.2d 752 (1964), *cert. denied,* 379 U.S. 977, [85 S.Ct. 676, 13 L.Ed.2d 567] (1965), we looked to what was done in *Preston* rather than to what was said, and we upheld a warrantless search presenting neither such danger. * * *