THE STATE OF OHIO *v.* MARTINEZ.

(Nos. 6143, 7971—Decided May 15, 1973.)

South Euclid Municipal Court.

*Mr. Bernard Mosesson,* city prosecutor, for plaintiff.
*Mrs. Gale M. Siegel* and *Mr. Lewis R. Katz,* for defendant.

KLEIN, J. The facts of this case as determined by the Court from an analysis of the credible evidence are as follows: At about 3:45 a. m. on October 2, 1971, Police Officers John Cooper and James Jimison observed a Chevrolet van traveling in a westerly direction on Cedar Road in the city of South Euclid, Ohio. The van had only one license plate. The police instructed the driver of the van to stop. Officer Jimison alighted from the police car and commenced to walk towards the stopped van. As he approached, he observed the driver make a quick furtive movement by leaning over the seat, extending his arm towards the back of the van and reaching under the seat as if to hide something under the seat. When the door of the van was opened, Officer Jimison detected the strong odor of marijuana and observed four or five rounds of loose ammunition scattered on the floor directly in back of the front seat and a box of ammunition on the dashboard. When the driver

stepped out of the van, Officer Jimison observed a pipe on the front seat which was of a type used to smoke marijuana. While the driver was standing outside of the van a short distance from Officer Jimison and while the defendant was still sitting in the back seat, Officer Jimison reached under the front seat and pulled out a loaded .22 caliber revolver. This weapon was found a short distance from the spot where the four or five shells were scattered and in the very place where Officer Jimison had observed the driver reaching at the time he (Jimison) was approaching the van. Both the defendant and the driver were frisked for weapons, handcuffed, and the search of the van was continued. Hallucinogen tablets were found in a coat which was laying in the rear of the van and 6 pipes of a type used to smoke marijuana were found in the van. The driver and the defendant were then taken to the South Euclid Police Station. Thereafter, the defendant was charged with the possession of a hallucinogen and the driver was charged with carrying a concealed weapon and possession of a hallucinogen.

This matter is now before this court on a Motion to Suppress Evidence filed by the defendant, Roy Daniel Martinez. For the hereinafter set forth reasons, this motion must be denied.

The license plate violation justified the stopping of the van by the South Euclid Police. What happened thereafter justified the search. After Officer Jimison opened the door of the van he detected the strong odor of marijuana and observed a pipe of the type used to smoke marijuana. In *Chess* v. *State* (1962), 172 Tex. Crim. Rep. 412, 357 S. W. 2d 386, the Court of Criminal Appeals of Texas upheld the search of a motor vehicle (which had been stopped for a minor traffic violation) when the arresting officers detected the odor of marijuana. In its decision upholding the validity of the search, the court said:

"It is next contended that the search was illegal. With this contention we do not agree.

"The evidence reflects that the arresting officers observed appellant violating Art. 6701d, sec. 68(b), Vernon's Ann. Civ. St. of our traffic laws. Under these circum-

stances, they were authorized to arrest him and, upon smelling the marijuana, authorized to search the automobile. *Richardson* v. *State*, 163 Tex. Cr. Rep. 585, 294 S. W. 2d 844.''

In the instant case, the factual situation compelling denial of the Motion to Suppress is considerably stronger than the one which existed in the Texas case. Here, an ''aura of crime'' confronted Officer Jimison. He not only detected a strong odor of marijuana, he had previously observed a furtive movement. He also saw a pipe, four or five loose bullets and a box of ammunition. Furthermore, when he reached under the seat at the precise point where it appeared the driver was hiding something, a loaded .22 caliber revolver was found concealed under the seat.[1] Thereafter the search continued—this continuance was reasonably related to what Officer Jimison observed as he approached the van and to what he saw, sensed and found in the van. He had probable cause to arrest for a felony.[2] He had probable cause to believe that a serious misdemeanor or felony[3] was being or had just been committed. The continuance of the search was incident to a lawful arrest, was substantially contemporaneous with such arrest, and was confined to the immediate vicinity of the arrest. Furthermore, all the circumstances (*i. e.*, detecting the odor of marijuana, finding a concealed weapon, etc.) justified a continuation of the search of the motor vehicle for contraband, criminal substances, instruments of the crime, weapons, etc. *Carroll* v. *United States* (1925), 267

---

[1] Since the driver, and not the defendant, was charged with carrying a concealed weapon, the portion of the search which uncovered the gun is not relevant to the instant Motion to Suppress except insofar as the finding of the gun might have been justification for the further search of the entire van. In any event, considering what Officer Jimison observed when he approached the van and what he observed in the van, it could not seriously be contended that his reaching under the front seat to look for a weapon was an illegal search since the officer's action in so doing was clearly necessary for his own safety and protection. *Terry* v. *Ohio* (1968), 392 U. S. 1, 88 S. Ct. 1868.

[2] Since the gun was loaded, this is a felony under Ohio law.

[3] Under Ohio law, a first offense of possession or use of a hallucinogen is a very serious misdemeanor. A subsequent such offense is a felony.

U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543. In *Adams* v. *United States* (1964), 118 U. S. App. D. C. 364, 336 F. 2d 752, cert. denied, 379 U. S 977, 85 S Ct. 676 (1965), the U. S. Court of Appeals, District of Columbia Circuit, discussed the rule of law governing the contemporaneous search of a motor vehicle when there is probable cause to arrest as follows:

"The issue as to the admissibility of the evidence found in the trunk of the car is more difficult. The Government seeks to justify the search of the trunk as an incident to appellant's arrest. Appellant argues that the search without warrant was illegal since the trunk was locked, the car keys were turned over to the police, and hence there was no danger that, after being arrested, he 'could have used any weapons in the car or could have destroyed any evidence of a crime * * *.' *Preston* v. *United States* (1964), 376 U. S. 364, 368, 84 S. Ct. 881, 883, 11 L. Ed. 2d 777. Thus there was no emergency justifying a search without a warrant.

"Preston did hold that a warrantless car search subsequent to an arrest was illegal, but there the search was not an incident to the arrest. It occurred at the police station to which both the parties arrested and the car had been brought. Thus the search 'was too remote in time or place to have been made as incidental to the arrest * * *.' *Preston* v. *United States, supra,* 376 U. S. at 368, 84 S. Ct. at 884. See also *Smith* v. *United States* (1964), 118 U. S. App. D. C.—, 335 F. 2d 270.

"We recognize, of course, the logic in appellant's argument. After his arrest there was no danger from unseen weapons or of evidence disappearing from the locked trunk of the car. The *status quo* with respect to the trunk could have been maintained until a search warrant was issued, particularly since the car itself was impounded by the police. *Cf. Johnson* v. *United States* (1948), 333 U. S. 10, 68 S. Ct. 367, 92 L. Ed. 436. But as far as we are aware, no court has yet held that a car, including its trunk, may not be searched without warrant at the time and place its occupants are placed under lawful arrest. We are not persuaded that we should be the first court to do so."

It is significant that the factual basis for justifying a

search without a warrant in the instant situation was *far stronger* than the one before the court in *Adams* v. *United States, supra*.[4]

Defendant's counsel have done an exceptionally thorough and skilled job in presenting arguments and authority in support of their Motion to Suppress, the cornerstone of their position being the fact that the defendant and the driver were handcuffed and standing outside the van[5] at the time of the search which uncovered the illegal pills and five of the pipes; however, the long series of cases relied upon by defendant's counsel are distinguishable on their facts, involving one of the following distinguishable features:

A) The search involved a dwelling, store or other type of fixed structure. *Chimel* v. *California* (1969), 395 U. S. 752, 89 S. Ct. 2034.

B) The defendant was in custody at the police station at the time the motor vehicle was searched.[6]

C) The motor vehicle was in police custody at a location other than the scene of the arrest at the time it was searched.[7] *Preston* v. *United States* (1964), 376 U. S. 364, 84 S. Ct. 881.

D) The defendant was arrested for a minor traffic violation and the scope and purpose of the search which followed was unrelated to the reason for the arrest.

The distinction between the search without a warrant of "fixed structures like houses" and a motor vehicle was ably set forth in *Preston* v. *United States, supra*, at pages 366-367, as follows:

---

[4]See, also, *Wright* v. *United States* (C. A. D. C. 1968), 404 F. 2d 1256; *Moreno-Vallejo* v. *United States* (C. A. 5, 1969), 414 F. 2d 901; *United States* v. *Leonard* (C. A. D. C. 1971), 334 F. Supp. 1006.

[5]Defendant's counsel stress that under these circumstances neither the defendant nor the driver had access to any weapon that might be in the van nor were they in a position to destroy evidence or the fruits or instruments of the crime, and, therefore, there was no longer a valid reason for not securing a search warrant before continuing the search of the van.

[6], [7]Search is "remote in time or place from the arrest." *Preston* v. *United States*, 376 U. S. 364, 367.

"* * * Common sense dictates, of course, that questions involving searches of motorcars or other things readily moved cannot be treated as identical to questions arising out of searches of fixed structures like houses. For this reason, what may be an unreasonable search of a house may be reasonable in the case of a motor car. See *Carroll* v. *United States, supra,* 267 U. S., at 153, 45 S. Ct. at 285, 69 L. Ed. 543. But even in the case of motor cars, the test still is, was the search unreasonable. * * *''

The court in *Chimel* v. *California, supra,* recognized the hereinabove set forth distinction as is evidenced by the following footnote, on page 764, in its decision:

"Our holding today is of course entirely consistent with the recognized principle that, assuming the existence of probable cause, automobiles and other vehicles may be searched without warrants 'where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought. *Carroll* v. *United States,* 267 U. S. 132, 153; see *Brinegar* v. *United States,* 338 U. S. 160.''

It is indeed significant that *Carroll* v. *United States, supra* (267 U. S. 132), is cited with approval in the above footnote, thereby indicating the Supreme Court's recognition of the "necessary difference," as explained in the *Carroll* case, at page 153, ''* * * between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained and a search of a ship, motor boat, wagon, or automobile * * *.''

Sometimes it seems that we (attorneys and judges) get so involved in technical niceties and fine legal distinctions that we not only lose our perspective but we also lose sight of the fundamental issue before us and its origin. Here, it is the Fourth Amendment's protection "against unreasonable searches and seizures." As Officer Jimison approached the van, the panorama of events which followed created an "atmosphere of crime and potential danger." Can it be logically contended that a search under these circumstances was unreasonable? Clearly, had the police

permitted the occupants to remain in the van during the search thereof, this warrantless search would have been justified. It was incident to a lawful arrest. It was necessary for their own protection and to prevent the destruction of evidence and the instruments of the crime. The van was small enough so that its entirety was within the reach of its occupants. Can it be said that the search which continued following the finding of the loaded revolver should be declared "unreasonable" because the police (in the exercise of intelligent police practice) asked the occupants to alight from the van and frisked and handcuffed them before proceeding any further with the search of the van? Should officers of the law under these circumstances be required to allow suspects to remain in a motor vehicle (or to remove them from the vehicle but neglect to handcuff them) while they search it so as to avoid the necessity of trying to get a search warrant at 3.45 a. m. in the morning? I, for one, would not like to be the judicial authority who forced them into the dilemma of making such a decision. Of course, when circumstances warrant, police should be required to obtain a search warrant before proceeding with a search no matter how difficult a task this would be. But here, the basis for this search (and for continuing it once it had begun) were so multitudinous, were so patent, and were so clear that to conclude that this was an "unreasonable search" within the meaning of the Fourth Amendment because it did not have the stamp of a judge would, to me at least, not only be devoid of logic, it would lack just plain old fashion common sense—the real heart and essence of good law. The United States Court of Appeals, Second Circuit, very ably expressed the rationale for upholding the validity of an "on the spot" warrantless search of a motor vehicle incident to a lawful arrest as follows:

"* * * The rule that officers making a valid arrest of one or more occupants of an automobile can, without a warrant, then and there search the car including its trunk is reasonable not only because of necessity in many cases but because a speedy search may disclose information useful in tracking down accomplices still on the move. Al-

though the narcotics offense for which Gorman and his associates here were arrested may not have been of the sort where such considerations are of great importance, it is undesirable to impose exceptions, necessarily difficult in practical application, on a rule so long established and so clearly understood by the police. Like the Court of Appeals for the District of Columbia, we are unpersuaded of the necessity, or the wisdom, of qualifying the rule so as to require officers lawfully arresting occupants of an automobile to make a considered and correct on-the-spot determination whether the circumstances of the arrest might render it feasible to secure a warrant before searching the car. See *Adams* v. *United States* (1964), 118 U. S. App. D. C. 364, 336 F. 2d 752, cert. denied 379 U. S. 977, 85 S. Ct. 676, 13 L. Ed. 2d 567 (1965)." *United States* v. *Gorman* (C. A. 2, 1965), 355 F. 2d 151, 155.

"* * * Both the Court of Appeals for the District of Columbia and this court have held that *Preston* did not 'require officers lawfully arresting occupants of an automobile to make a considered and correct on-the-spot determination whether the circumstances of the arrest might render it feasible to secure a warrant before searching the car.' *United States* v. *Gorman* (2 Cir. 1965), 355 F. 2d 151, 155, cert. denied, 384 U. S. 1024 (1966); accord, *Adams* v. *United States* (1964), 118 U. S. App. D. C. 364, 336 F. 2d 752, 753, cert. denied, 379 U. S. 977, 85 S. Ct. 676, 13 L. Ed. 2d 567 (1965). *We perceive no reason for a different rule because the person arrested was alongside the car or, as here, in a house close by.*" (Emphasis added.) *United States* v. *Francolino* (C. A. 2, 1966), 367 F. 2d 1013, 1018.

It is my considered opinion that the writers of our Constitution would not have deemed the action of the South Euclid Police to have violated the right they gave to every American to be protected against "unreasonable searches and seizures." In the last analysis, the question here is simply—Was the search of the van by the police "unreasonable" within the concept of the Fourth Amendment? I think not.

*Defendant's Motion to Suppress is denied.*