612 P.2d 228

**STATE of New Mexico, Petitioner,**

v.

**Jose MARTINEZ, Respondent.**

**No. 12772.**

Supreme Court of New Mexico.

June 2, 1980.

Rehearing Denied June 26, 1980.

Jeff Bingaman, Atty. Gen., Walter G. Lombardi, Asst. Atty. Gen., Santa Fe, for petitioner.

Martha A. Daly, App. Defender, Michael Dickman, Asst. App. Defender, Santa Fe, for respondent.

## OPINION

FELTER, Justice.

Defendant-Appellant, Jose Martinez (Martinez), was convicted of larceny over $100 and contributing to the delinquency of a minor. The Court of Appeals reversed the judgment and sentence and remanded the case. We granted certiorari and now reverse the decision of the Court of Appeals.

The underlying question presented for our review is whether there was probable cause supported by reliable information for the warrantless arrest and the search incident thereto.

To reach the underlying question we must determine (1) whether a radio dispatch furnished to an arresting officer reliable information showing probable cause upon which he could base a warrantless arrest and search, and (2) whether an appellate court is limited to the record made on a motion to suppress or may review the entire record to determine if there was reliable information showing probable cause to support a warrantless arrest and search.

Larry Reynolds, a gas station manager, contacted the police to report that he had been robbed and to describe the suspects and the vehicle they were driving.

Police Officer Roger Tompkins testified at the suppression hearing that at or about 5:30 in the afternoon on September 21, 1978 he received a communication from his dispatcher in Alamogordo. The message was, to be on the lookout for a vehicle which had just been involved in the robbery of an Alamogordo Exxon station. The car was described as a 1978 Dodge Colt, white over blue, with New Mexico license plate number CJX–367. He was told that two Spanish male subjects were in the vehicle, that the younger suspect was driving, and the other one was wearing a stocking cap. In addition he was informed that the vehicle was heading south out of Alamogordo on U.S. Highway 54.

Further, Officer Tompkins testified that he was familiar with the vehicle and the subjects. He had stopped the vehicle twice previously and had given both subjects citations for speeding. He stated that he had seen the vehicle at least once a week.

Shortly after receiving the dispatch, Officer Tompkins spotted the described vehicle south of Alamogordo on U. S. Highway 54. It was occupied by two Spanish males. The

license number was the same as that described to Officer Tompkins. He knew both subjects and had them stop and get out of the driver's side of the vehicle. Garcia was driving the vehicle and Martinez was on the passenger's side. Both subjects were told they were under arrest for robbery. The officer found a stocking cap lying on the front seat. Martinez had a "gob" of money that he was trying to stick in his right rear pocket, a part of which dropped out of his hand. Officer Tompkins took the stocking cap, a screwdriver "sitting beside" Martinez in the vehicle, because "it could have been used as a weapon", and about $120 from Martinez.

The dispatcher had not included in the dispatch an information about the source of the information and conclusions contained in the dispatch. Larry Reynolds did not testify at the suppression hearing. However, Reynolds did testify at the trial concerning the details of the robbery personally observed by him, and he identified the defendant as the person who had gone into the office where the robbed cash register was located. Further, Reynolds testified that he called the police twice and on the second call gave the police an account of the incident, describing the car and its occupants who had robbed the station.

The dispatch did not state that it was Reynolds who had given the dispatcher the information upon which the dispatch was based. Officer Tompkins was not called upon to make a judgment about the reliability of the dispatcher's information in order to decide whether he would or would not make a warrantless arrest.

■ While a magistrate or dispatcher, as the case may be, is called upon to make such a judgment of probable cause and must have facts showing reliability of the informant before issuing a warrant or placing the dispatch for arrest or search and seizure, it is not normal police practice to require the officer receiving the dispatch to check out the reliability of the informant. Law enforcement would be seriously hampered by such a requirement. This practice is supported by case precedent, e. g., *White-*

*ley v. Warden*, 401 U.S. 560, 566, 568, 91 S.Ct. 1031, 1036, 1037, 28 L.Ed.2d 306 (1971):

> [T]he standards applicable to the factual basis supporting the officer's probable-cause assessment at the time of the challenged arrest and search are at least as stringent as the standards applied with respect to the magistrate's assessment. (Citation omitted.)

.    .    .    .    .

The State, however, offers one further argument in support of the legality of the arrest and search: the Laramie police relied on the radio bulletin in making the arrest, and not on Sheriff Ogburn's unnamed informant. Clearly, it is said, they had probable cause for believing that the passengers in the car were the men described in the bulletin, and, in acting on the bulletin, they reasonably assumed that whoever authorized the bulletin had probable cause to direct Whiteley's and Daley's arrest. *To prevent arresting officers from acting on the assumption that fellow officers who call upon them to make an arrest have probable cause for believing the arrestees are perpetrators of a crime would, it is argued, unduly hamper law enforcement.*

> *We do not, of course, question that the Laramie police were entitled to act on the strength of the radio bulletin. Certainly police officers called upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause. Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest.* (Emphasis added.)

■ The above language applies a simple, common sense rationale to the requirements of the Fourth and Fourteenth Amendments to the United States Constitution which, taken together, prohibit unreasonable arrests and searches and seizures by

the states. In fairness to both sides in a criminal case, we apply the same rationale to those cases where it turns out to be true in fact that "information requisite to support an independent judicial assessment of probable cause" was given to the magistrate, or, in the case of a warrantless arrest or search and seizure, to the police radio dispatcher.

In *Whiteley*, information given to the magistrate did *not* support "an independent judicial assessment of probable cause", and therefore the arrest and search in that case were held illegal. In the instant case it is conceded by defendant that the information given to the dispatcher *would* support "an independent judicial assessment of probable cause". So following the rule in *Whiteley*, the arrest and search incident thereto must be held to be lawful.

Additional support for our holding that the arrest and search were lawful in this case is afforded by the decision in *United States v. Pitt*, 382 F.2d 322, 324–5 (4th Cir. 1967). We quote in part from that decision as follows:

> Probable cause, however, can rest upon the *collective* knowledge of the police, rather than solely on that of the officer who actually makes the arrest. (Citations omitted.) It was enough that Agent Wurms reported to Agent Worden the substance of his telephone conversation with the informant.

*Id.* at 324–325.

Other cases where it was held that a radioed report to the arresting officer furnished the officer with probable cause, without inquiry or knowledge by the arresting officer as to the radio dispatcher's source of information, are: *United States v. Williams*, 526 F.2d 1000 (6th Cir. 1975); *Jackson v. United States*, 319 F.2d 782 (5th Cir. 1963); *State v. Sanchez*, 82 N.M. 585, 484 P.2d 1295 (Ct.App.1971); *State v. Everitt*, 80 N.M. 41, 450 P.2d 927 (Ct.App.1969).

Defendant argues that despite the fact that the entire trial record supports a finding of probable cause for the warrantless arrest, *only* the evidence of record in the motion to suppress hearing may be reviewed. Upon that record the State failed to carry its burden—this according to the rule deferred to in *State v. Deltenre*, 77 N.M. 497, 424 P.2d 782 (1966), *cert. denied*, 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136 (1967), and *Rodriguez v. State*, 91 N.M. 700, 702, 580 P.2d 126, 128 (1978), wherein it was stated that the facts to be examined on appeal are only those facts elicited at the hearing on the motion to suppress.

We believe that the limited scope of review referred to in *Rodriquez v. State* and *State v. Deltenre* should be broadened so that the appellate court may determine if probable cause did or did not exist by an examination of all the record surrounding an arrest or search and seizure. The more narrow rule is a two-edged sword that in one case may improperly cut the defendant, and in another case the prosecution. In *Rodriquez v. State*, a search of a sleeping bag within the exclusive possession and control of the police was made without a warrant and heroin was found in the sleeping bag. Had the circumstances under which the heroin was found been otherwise, a strict application of the narrow rule of review would have resulted in the defendant's conviction being affirmed. There was no record of the suppression hearing before the reviewing court. Therefore, the trial court's denial of the motion to suppress would not be overturned without a record to support such action and necessarily would have been affirmed, a result which the entire record would show to be insufficient to establish probable cause for a warrantless search and clearly erroneous. Thus, appellate rules would be vindicated at the cost of protection under the Fourth and Fourteenth Amendments to the United States Constitution.

Scope of review was not the dispositive issue in *Rodriquez v. State*. That case was reversed because no exigent circumstances existed to justify the warrantless search of the sleeping bag. The broader scope of appellate review sanctioned by this decision, in order to truly and fully determine the legality or illegality of an arrest or search, is consistent with a part of the language in

*Whiteley, supra,* 401 U.S. at 568, 91 S.Ct. at 1037, applied bilaterally, to-wit, "[w]here, however, the contrary *turns out to be true,* an . . . arrest cannot be insulated from . . . the decision of the instigating officer to rely on fellow officers to make the arrest." (Emphasis added.)

■ We cannot know that which "turns out to be true" without looking at additional facts other than those available at the time to the officer making an arrest based upon a radio dispatch and if we hide from a part of the relevant truth in the appellate decision making process, we hide from the litigants and the world a part of the truth and are proscribed from administering a full measure of justice. However, we state with great caution that an arrest or search warrant must be supported by affidavit, when based upon information from an informant, setting forth facts showing the reliability of the informant and probable cause. We reiterate that the radio dispatch upon which a warrantless arrest or search is based must contain as high a standard showing probable cause and reliability as that required to support a warrant, in addition to exigent circumstances which would justify proceeding without a warrant. It must not be forgotten that in all cases the ultimate question is whether the search and seizure was reasonable. *See Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). We do not by this decision change or dilute the high standards imposed by the Fourth and Fourteenth Amendments upon a magistrate in issuing a warrant or upon an officer acting without a warrant. Only the scope of review by an appellate court so that the full truth may be considered, as to reliability and the existence of probable cause, is delineated in this opinion.

The decision of the Court of Appeals is reversed and the judgment and sentence of the trial court are affirmed.

IT IS SO ORDERED.

SOSA, C. J., and EASLEY, PAYNE and FEDERICI, JJ., concur.