This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38422**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ALONDRA LOZOYA-HERNANDEZ,**

Defendant-Appellant.

**APPEAL FROM THE METROPOLITAN COURT OF BERNALILLO COUNTY**
**Henry A. Alaniz, Metropolitan Judge**

Hector H. Balderas, Attorney General
Maha Khoury, Assistant Attorney General
Santa Fe, NM

for Appellee

D. Eric Hannum
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**BACA, Judge.**

**{1}** Defendant Alondra Lozoya-Hernandez appeals her convictions for driving while under the influence of drugs (DWI), first offense, contrary to NMSA 1978, Section 66-8-102(B) (2016); resisting, evading or obstructing an officer, contrary to NMSA 1978, Section 30-22-1 (1981); and speeding, contrary to NMSA 1978, Section 66-7-301 (2015). On appeal, Defendant maintains that (1) the metropolitan court erred in denying her motion to suppress for lack of reasonable suspicion; (2) there was insufficient evidence to sustain the conviction for driving while under the influence of marijuana; and (3) the metropolitan court committed fundamental error when it applied the incorrect

standard when it found Defendant guilty of DWI. For the reasons set forth below, we affirm.

**BACKGROUND**

**{2}** Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we set forth here only a brief overview of the relevant historical facts of this case. We reserve discussion of specific facts where necessary to our analysis.

**{3}** While on patrol, Deputy Mark Gurule stopped Defendant for speeding. When Deputy Gurule made contact with Defendant, he smelled the odor of marijuana coming from her vehicle, observed smoke inside the vehicle, and Defendant admitted to smoking marijuana before driving. After being asked several times whether she would complete field sobriety tests, Defendant failed to consent and was placed under arrest for DWI. While Deputy Gurule was handcuffing Defendant, she pulled away from him, attempted to turn into him, and squeezed his hands, which formed the basis for the resisting, evading or obstructing charge. Following a bench trial, Defendant was convicted of DWI, resisting, evading or obstructing an officer, and speeding. This appeal followed.

**DISCUSSION**

**I.      The Metropolitan Court Properly Denied Defendant's Motion to Suppress**

**{4}** Defendant argues the State failed to establish that Deputy Gurule had reasonable suspicion to conduct a traffic stop of Defendant, and therefore all evidence obtained after the stop should have been suppressed by the metropolitan court. We disagree and hold that the metropolitan court did not err by denying Defendant's motion to suppress.

**{5}** Our review of a trial court's order on a motion to suppress presents "a mixed question of fact and law." *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861. "In reviewing a district court's ruling denying a motion to suppress, the appellate courts draw all reasonable inferences in favor of the ruling and defer to the district court's findings of fact as long as they are supported by substantial evidence." *State v. Murry*, 2014-NMCA-021, ¶ 10, 318 P.3d 180. "[W]e then review de novo the trial court's application of law to the facts to determine whether the search or seizure were reasonable." *Leyva*, 2011-NMSC-009, ¶ 30.

**{6}** "A police officer can initiate an investigatory traffic stop without infringing the Fourth Amendment [of the United States Constitution,] or Article II, Section 10 [of the New Mexico Constitution] if the officer has a reasonable suspicion that the law is being or has been broken." *State v. Martinez*, 2018-NMSC-007, ¶ 10, 410 P.3d 186 (internal quotation marks and citation omitted). "This includes reasonable suspicion that a traffic

law has been violated." *State v. Siqueiros-Valenzuela*, 2017-NMCA-074, ¶ 11, 404 P.3d 782.

**{7}**     The metropolitan court's findings of fact were based on Deputy Gurule's testimony at trial. Deputy Gurule testified that while on patrol, he observed Defendant driving at a "high rate of speed." Defendant objected on the grounds of speculation and the metropolitan court sustained the objection. However, in response to the next question, and without objection by Defendant, Deputy Gurule answered that he "initiated a traffic stop for speeding."

**{8}**     Deputy Gurule again testified, in response to a question from the court, that the reason for the traffic stop was his observation of Defendant speeding. Defendant moved for suppression of all evidence obtained after the traffic stop and dismissal of the charges based on a lack of reasonable suspicion. The court denied the motion to suppress.

**{9}**     Defendant claims that because the only testimony regarding the reason for the traffic stop was Deputy Gurule's observation that Defendant's vehicle appeared to be traveling at a "high rate of speed," and did not reference Defendant's actual speed nor the posted speed limit, the testimony was insufficient to support a finding of reasonable suspicion. The State responds that the dashcam video of Defendant's stop provides additional support for the stop, including Deputy Gurule's statement that Defendant was driving 63 miles per hour in a 40 mile-per-hour-speed zone. Defendant contends that we should not consider the video because it was admitted after the court denied his suppression motion. This misapprehends the scope of our review on appeal—we are not limited to considering only the evidence submitted prior to the suppression ruling; we instead can consider the entire record on appeal. *See State v. Martinez*, 1980-NMSC-066, ¶ 16, 94 N.M. 436, 612 P.2d 228 (holding that appellate courts consider the entire record on appeal, not just evidence presented during a suppression hearing, in affirming the denial of a motion to suppress).

**{10}**     Immediately after the traffic stop, Deputy Gurule explained to Defendant the basis for the stop and stated, "The reason I pulled you over . . . [is] I got your speed on radar going 63 miles per hour. Speed limit through here is 40." The deputy's observation of Defendant's speed, coupled with the deputy's testimony at trial, that he "initiated a traffic stop for speeding," and later, in response to a question from the court, that the reason for the traffic stop was his observation of Defendant speeding, constitutes the type of objective facts that we will consider sufficient to raise a reasonable and articulable suspicion. *See Murry*, 2014-NMCA-021, ¶ 29 ("An officer may stop and detain a citizen if the officer has a reasonable and articulable suspicion that the person stopped is or has been involved in criminal activity." (alteration, internal quotation marks, and citation omitted)).

**{11}**     "[We] will find reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring."

*State v. Dopslaf*, 2015-NMCA-098, ¶ 8, 356 P.3d 559 (internal quotation marks and citation omitted). Therefore, the stop of Defendant was justified by reasonable suspicion and the metropolitan court did not err in denying Defendant's motion to suppress.

## II. Sufficient Evidence Supports Defendant's Conviction for DWI

**{12}** Next, Defendant argues there was insufficient evidence to support her DWI conviction. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{13}** To convict Defendant of DWI under Section 66-8-102(B), the State had to prove beyond a reasonable doubt that (1) Defendant operated a motor vehicle; (2) while she "was under the influence of drugs to such a degree that [she] was incapable of safely driving a vehicle"; and (3) the offense happened in New Mexico. UJI 14-4502 NMRA. Here, the only element at issue is whether Defendant was under the influence of drugs to such a degree that rendered her incapable of safely driving a vehicle. Based on our review of the record, we conclude that there was sufficient evidence of both (1) that Defendant was under the influence of marijuana; and (2) that this rendered her incapable of safely driving a vehicle.

**{14}** First, the State presented sufficient evidence that Defendant was under the influence of a drug, specifically marijuana. When the deputy made contact with Defendant, he smelled the odor of marijuana coming from her vehicle, saw smoke inside the vehicle, and observed that Defendant's eyes were bloodshot and watery. Further, Defendant admitted to smoking marijuana "a few minutes" before driving. Defendant's admission, coupled with the deputy's observations, supports a reasonable inference that Defendant was under the influence of marijuana when she was driving.

**{15}** Second, the State presented substantial evidence that Defendant was under the influence of marijuana to such a degree that rendered her incapable of safely driving a vehicle. The dashcam video of Defendant's stop was introduced by Defendant at trial. The video begins with Defendant's vehicle stopped on the crosswalk at a red light at a busy intersection, which was a potential traffic violation. *See* NMSA 1978, § 66-7-351(A)(3), (5) (1978). While at the intersection waiting for the traffic light to change, Defendant activated the right turn signal of her vehicle, indicating her intention to make a right turn. However, after the deputy turned on the emergency lights of his police car, signifying for Defendant to pull over, Defendant drove forward instead. After Defendant drove through the intersection, she changed lanes without using a turn signal, and crossed in front of another vehicle, which was an additional potential traffic violation.

*See* NMSA 1978, § 66-7-325(A) (1978) (identifying New Mexico's turn signal statute). As Defendant pulled her vehicle over, she hit and drove over a curb and parked on the median in the parking lot of a strip mall. Upon contacting Defendant, the deputy told Defendant that he stopped her because she was speeding. The deputy told her that his radar device recorded her going 63 miles per hour in a 40 mile-per-hour zone. Defendant admitted to the deputy that she was speeding and apologized for her bad driving.

**{16}** Deputy Gurule testified that Defendant's movements were slow and lethargic, she had difficulty balancing when she exited her vehicle, and she did not respond to his commands. After Defendant exited her vehicle, Deputy Gurule attempted multiple times to obtain her consent to conduct standardized field sobriety tests (SFSTs). In response, Defendant insisted she was okay to drive and had not consumed alcohol, and she refused to answer affirmatively or negatively whether she would submit to SFSTs. Deputy Gurule then testified, without objection, that, based on his observations, Defendant's driving behavior, and his interactions with Defendant, he decided to place Defendant under arrest for DWI and request her consent for a blood draw because he believed Defendant was under the influence of marijuana. The trial judge reasonably could infer from this uncontested testimony that Deputy Gurule believed Defendant was under the influence of marijuana to such a degree that rendered her incapable of safely driving a vehicle. *See Cunningham*, 2000-NMSC-009, ¶ 26 (providing that the reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict").

**{17}** After Defendant was placed under arrest, she consented to a breath test for alcohol. Deputy Gurule explained he was additionally requesting Defendant's consent to a blood draw because he observed signs of Defendant being under the influence of marijuana—i.e., she admitted to smoking right before driving, her vehicle reeked of marijuana smoke, and her eyes were bloodshot and watery. In response to Deputy Gurule's multiple requests for a blood draw consent, Defendant again refused to answer affirmatively or negatively and Deputy Gurule treated her actions as a refusal. The trial judge reasonably could infer from this refusal, as well as Defendant's refusal to do the SFSTs, Defendant's consciousness of guilt to support Defendant's DWI conviction. *See State v. Storey*, 2018-NMCA-009, ¶ 40, 410 P.3d 256 ("New Mexico courts repeatedly have relied on evidence of refusal to consent to breath and blood alcohol tests to support convictions for driving while under the influence of alcohol."); *State v. Sanchez*, 2001-NMCA-109, ¶ 9, 131 N.M. 355, 36 P.3d 446 ("The State can use evidence of a driver's refusal to consent to the field sobriety testing to create an inference of the driver's consciousness of guilt.").

**{18}** In sum, the evidence showed that Defendant was speeding and committing other driving violations; that upon contact with Defendant, the deputy smelled the odor of marijuana coming from Defendant's vehicle, saw smoke inside Defendant's vehicle, and observed that Defendant's eyes were bloodshot and watery; that Defendant admitted to smoking marijuana right before driving, and that Defendant refused to consent to

performing SFSTs. Based on all the foregoing, we conclude there was substantial evidence to support Defendant's DWI conviction.

**{19}** Defendant makes one primary argument against this conclusion. She contends that direct, nonlay testimony is needed to establish a link between being under the influence of marijuana and being incapable of safely driving a vehicle. In support of this contention, Defendant cites one New Mexico case and three out of state cases.

**{20}** Defendant claims that *State v. Aleman*, 2008-NMCA-137, ¶ 19, 154 N.M. 79, 194 P.3d 110, supports her conclusion that lay witnesses cannot evaluate common symptoms of any particular drug. While *Aleman* stated that drug recognition expert evidence is helpful to a fact-finder, it did not hold that its use is required in every case. *See id.* ("The [drug recognition expert's] testimony is helpful to the trier of fact because although many jurors might be familiar with the individual symptoms that the [drug recognition expert] observed, we doubt that a typical juror would have had the detailed information about the correlation between these observations and a particular category of drug." (internal quotation marks and citation omitted)).

**{21}** The out-of-state cases cited by Defendant are distinguishable. First, Defendant directs us to Montana, a state that requires expert testimony regarding "a defendant's ability to drive safely due to drug consumption." *State v. Larson*, 2010 MT 236, ¶ 39, 243 P.3d 1130. In *Larson*, the Montana Supreme Court held that the district court erred in admitting expert opinion testimony from officers due to lack of foundation. *Id.* ¶ 48. Here, without objection, Deputy Gurule gave his opinion that, based on his observations and interactions with Defendant, he believed Defendant was under the influence of marijuana and placed Defendant under arrest for DWI as a result. Defendant did not contend below, nor does she on appeal, that Deputy Gurule's testimony was expert opinion testimony, lacking appropriate foundation, as was the claim in *Larson*. We therefore do not find *Larson* persuasive in this case.

**{22}** Second, *Chillicothe v. Lunsford*, discussed prescription drugs, not marijuana. 2015-Ohio-4779, 49 N.E.3d 852, ¶ 20 ("Instead, this case involves only the question of impairment by a prescription medication."). And last, in *State v. Stark*, the state did not involve recent marijuana use, unlike here where Defendant admitted to smoking marijuana "a few minutes" before driving. 333 P.3d 844, 847-48 (providing that "[e]vidence of *past* drug use is relevant to a charge of driving under the influence of that drug only if the [s]tate proves a connection between the past drug use and a driver's impairment at the time the motor vehicle was operated" where toxicology report demonstrated only past marijuana use (emphasis added)).

**{23}** Without persuasive authority that more or different evidence is needed to establish Defendant was under the influence of marijuana to such a degree that rendered her incapable of safely driving a vehicle, we decline to impose such a requirement today.

## III.     The Metropolitan Court Did Not Commit Fundamental Error

**{24}** Defendant argues that the metropolitan court applied the wrong legal standard when it found Defendant guilty of DWI. Defendant's argument is based on the court's finding that the marijuana had impaired Defendant "to the slightest degree" rather than to a degree that rendered Defendant "incapable of safely driving a vehicle." Essentially, Defendant argues that the court erred because she was convicted without a finding on a necessary element of the offense.

**{25}** This argument was not preserved below and we therefore review it for fundamental error. *State v. Cabezuela*, 2011-NMSC-041, ¶ 21, 150 N.M. 654, 265 P.3d 705; *accord* Rule 12-321(B)(2)(c) NMRA. "Our review involves two basic steps. The first is to determine whether error occurred. In other words, our analysis begins at the same place as the analysis for reversible error: we ask whether a reasonable juror would have been confused or misdirected by the jury instruction. . . . Jury instructions cause confusion or misdirection when, through omission or misstatement, they do not provide an accurate rendition of the essential elements of a crime." *State v. Ocon*, 2021-NMCA-032, ¶ 7, 493 P.3d 448 (alterations, internal quotations marks, and citations omitted).

**{26}** "If we conclude that the instructions were erroneous, we proceed to the second step, asking whether the error is fundamental. Fundamental error exists if it would shock the court's conscience to allow the conviction to stand, either because of the obvious innocence of the defendant, or because a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused. This inquiry requires us to review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case." *Id.* ¶ 8 (alterations, internal quotation marks, and citations omitted). Importantly, however, an exception exists "where proof of the omitted element is so strong that no rational jury could have failed to find that element." *Id.* ¶ 12.

**{27}** As to the first step of our fundamental error review, we agree with Defendant that the metropolitan court erred by applying the incorrect standard when adjudging Defendant guilty of driving while under the influence of drugs (DWI), contrary to Section 66-8-102(B). In this case, jury instructions were not given because Defendant's guilt was decided by a judge and not a jury. Nevertheless, during closing arguments, the prosecutor argued that, "[b]ased upon the totality of the circumstances in aggregate, based upon the deputy's observations, based upon his training and experience, he felt that Defendant was *impaired to the slightest degree* as a vehicle driver and would be a danger to herself and others if she continued operating a motor vehicle that evening." (Emphases added.) At the conclusion of the trial, the court found Defendant guilty of DWI. The court stated that it found her guilty, "[b]ased on the totality of the circumstances as the officer testified . . . I am going to find her guilty of driving while under the influence of intoxicating drugs or the drug that *impaired her to the slightest degree*." (Emphases added.) Instead of applying the standard for a person accused of driving while under the influence of any *drug* in UJI 14-4502,[1] the metropolitan court

---

[1] In addition to other elements of the charge, the State must prove beyond a reasonable doubt that, "[a]t that time [(Defendant was driving),] the defendant was under the influence of drugs to such a degree that the defendant was incapable of safely driving a vehicle[.]" UJI 14-4502.

erred and applied the standard for a person who is accused of driving while under the influence of *intoxicating liquor* in UJI 14-4501.[2]

**{28}** However, in regard to the second step of our fundamental error review, Defendant does not acknowledge the lack of preservation and therefore failed to argue fundamental error in her brief-in-chief. In Defendant's reply brief, she simply argues the metropolitan court committed fundamental error but does not argue or cite relevant case law to support or develop her argument.

**{29}** In other words, Defendant does not develop this issue for our review, and we will not review undeveloped or unsupported arguments. *See State v. Fuentes*, 2010-NMCA-027, ¶ 29, 147 N.M. 761, 228 P.3d 1181 (noting that we will "not review unclear or undeveloped arguments [that] require us to guess at what [a party's] arguments might be"); *see also State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and . . ., given no cited authority, we assume no such authority exists."). It is not our job to surmise from inadequate analysis what a party's argument might be, and, indeed, to do so would be counterproductive to our duties as an appellate court. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, [the appellate court] would have to develop the arguments itself, effectively performing the parties' work for them. . . . This creates a strain on judicial resources and a substantial risk of error." (citation omitted)).

**{30}** As a result, we decline to consider this issue further.

**CONCLUSION**

**{31}** For the reasons stated above, we affirm.

**{32} IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**JACQUELINE R. MEDINA, Judge**

---

[2]In addition to other elements of the charge, the State must prove beyond a reasonable doubt that, "[a]t the time [(Defendant was driving),] the defendant was under the influence of intoxicating liquor, that is, as a result of drinking liquor the defendant was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public." UJI 14-4501.